IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| KAJEET, INC., | § | |
| | § | |
| Plaintiff, | § | CASE NO. 21-cv-5-MN |
| | § | |
| v. | § | JURY TRIAL DEMANDED |
| | § | |
| MCAFEE CORP., | § | |
| | § | |
| Defendant. | § | |

**~~ORIGINAL~~ FIRST AMENDED COMPLAINT AND JURY DEMAND**

Plaintiff KAJEET, INC. files this First Amended Complaint for Patent Infringement against Defendant MCAFEE CORP., alleging as follows:

**I.      THE PARTIES**

1.      KAJEET, INC. ("Plaintiff" or "Kajeet") is a corporation organized and existing under the laws of the State of Delaware, with a principal place of business at 7901 Jones Branch Drive, Suite 350, McLean, Virginia 22102.

2.      Defendant MCAFEE CORP. ("Defendant" or "McAfee") is a limited liability company organized under the laws of Delaware with a principal place of business at 6220 America Center Drive, San Jose, California 95002. McAfee has already appeared in this case and may be served through its counsel of record. ~~may be served with process by serving its registered agent, The Corporation Trust Company located at Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801.~~

**II.     JURISDICTION AND VENUE**

3.      This is an action for infringement of United States patents under 35 U.S.C. §§ 271, *et seq.* Federal question jurisdiction is conferred to this Court over patent infringement actions under 28 U.S.C. §§ 1331 and 1338(a).

1

4.     Defendant is incorporated within this District and develops and/or sells its products, including the Accused Products described herein, in this District.

5.     Defendant has sufficient minimum contacts with the District of Delaware such that this venue is fair and reasonable.  Defendant has committed such purposeful acts and/or transactions in this District that it reasonably should know and expect that they could be hailed into this Court as a consequence of such activity.  Defendant has transacted and, at the time of the filing of this Complaint, continues to transact business within the District of Delaware.

6.     Further, upon information and belief, Defendant makes or sells products that are and have been used, offered for sale, sold, and/or purchased in the District of Delaware.  Defendant directly and/or through its distribution network, places infringing products or systems within the stream of commerce, which stream is directed at this district, with the knowledge and/or understanding that those products will be sold and/or used in the District of Delaware.

7.     For these reasons, personal jurisdiction exists, and venue is proper in this Court under 28 U.S.C. §§ 1391(b) and (c) and 28 U.S.C. § 1400(b), respectively.

III.    **BACKGROUND AND FACTS**

8.     Kajeet is the owner of all rights and title in and to U.S. Patent No. 8,667,559 ("the '559 Patent" or "the Asserted Patent").  The inventions disclosed and claimed in the Asserted Patent were developed by the founders, entrepreneurs, and engineers of Kajeet and were assigned to Kajeet upon issuance.

9.     Kajeet is a U.S.-based company, founded in 2003, which develops software and hardware solutions promoting safe use of mobile devices by children both at

2

home and in schools and libraries.  Kajeet was founded by three fathers who sought to develop systems and methods ensuring safe use of mobile phones, tablets, computers, and other mobile devices by their children.

10.     Kajeet has become an industry leader in this area of mobile device management, developing innovations that led to the issuance of thirty-seven eight U.S. patents to date, including the Asserted Patent, and having implemented its solutions in hundreds of school districts comprising thousands of schools across the nation.  These innovations were directly developed by the founders and engineers at Kajeet as part of Kajeet's continuous work to protect children from inappropriate and distracting online content, and to enable schools and families to keep children focused and safe from the many potential dangers associated with unconstrained access to online content.

11.     The disclosure and claims of the Asserted Patent describe improved control schemes implemented on communication devices, focusing on applications in which it is undesirable for the user of the communication device to have unfettered or unconstrained access to some or all of the available functionality supported by the communication device.  See, e.g., the '559 Patent at 1:47-62.[1]  A typical scenario addressed by the Asserted Patent is that of a smartphone, tablet, or laptop used by a child. See, e.g., the '559 Patent at 4:11-18; 4:38-44; and, 5:20-29. This is a relatively new problem that has arisen in the past decade as mobile communication devices have become more popular and more widely used throughout society, including in schools and

---

[1] All citations to the '559 Patent, which is attached hereto as Exhibit A, are illustrative rather than exhaustive and therefore do not comprise complete listings of all portions of the specification addressed to each topic for which citations are provided.

at home by children.  See, *e.g.*, the '559 Patent at 1:51-58; 2:10-21; 4:42-58; 6:34-409; 12:48-62; and, 14:13-23.

12.    Mobile smartphones appeared in the mid-1990s as Personal Digital Assistants ("PDAs").  These devices expanded the set of features accommodated by handheld mobile communication devices and their appearance coincided with the rise in popularity and use of the World Wide Web.  In 2007, Apple released the first iPhone and in 2008 released the App Store.  This signaled the beginning of mainstream smartphone ownership and usage and, in particular, ownership and usage of feature-rich smartphone devices by teens and children. Also, during this timeframe, other Internet-capable, mobile computing devices greatly expanded in popularity, including tablet devices, including iPads and Kindles, as well as laptop devices, including the Google Chromebook. Increasingly, these devices are put in the hands of teens and children both by their parents and by schools, giving them ready access which they never had before to inappropriate content, contacts, sexting, online gaming, among other undesirable features and functionality.  Further, this new access is cheap, anonymous, and readily-available at any time, day or night from virtually anywhere.  Parents, as well as school administrators and others, have struggled with addressing this newly created problem ever since.

13.    The Asserted Patent is addressed to specific systems and methods for addressing this new problem faced by parents, teachers, business owners, and the like. The Asserted Patent recognizes that old-world methodologies, such as simply taking the devices away, do not truly address the problem at hand and undermine the safety benefit of device ownership – continuous access for communication, such as always providing a direct means for a parent to call its child or vice versa.  For device ownership by teens

4

and others to provide this benefit, the device is necessarily in the possession of the teen at times when he or she is *away from* parents, teachers, and the like. Old-world monitoring of device use to preventing inappropriate use is therefore also ineffective and does not address the true context of this new problem in society created by the development and proliferation of feature-rich mobile communication devices.

14.     As explained in the specification of the Asserted Patent, prior art systems and methods for controlling mobile communication device usage in such settings were ineffective. For example, prepaid phone plans placed limits on the charges that could be run up on a mobile communication device but did so through toggling access to the communication network off once the account reached a zero balance. Beforehand, access to the communication network may be unconstrained while after, no access is provided whatsoever. This control scheme was ineffective for preventing misuse of the mobile communication device by a child while still providing access to desirable features. See, *e.g.*, the '559 Patent at 2:36-44.

15.     Likewise, unlimited use smartphone service plans could prevent the accumulation of excessive usage costs but were ineffective to prevent overuse or use of a mobile communication device at inappropriate times or to access inappropriate content. See, *e.g.*, the '559 Patent at 3:7-16.

16.     Other solutions involving control through enforcement of decisions based upon policies defining permitted use that were set and stored only in accessible portions of the memory of the device itself, such as in the volatile memory of the device. These solutions were likewise ineffective as the policies upon which decisions effecting control were vulnerable to manipulation or deletion by virtue of their only being stored in

5

accessible portions of memory of the computing device. Further, such solutions required separate and independent configuration of each computing device to be controlled, resulting in increased administrative costs.

17.     The '559 Patent states that the systems and methods disclosed therein "are effective tools for any phone user that requires some level of supervision, such as a handicapped individual, a person suffering from dementia, a corporate employee, or even an adult that has shown poor judgment in the past and needs help managing their affairs." '559 Patent at 5:34-41. The '559 Patent also states that:

> The ability to regulate **when a phone can be and cannot be used can also be of value to parents and school districts** with respect to resolving one of the greatest conflicts that exist between parents/students and school administrators - mobile phone usage by kids. Parents want children to have a mobile phone with them so the child can call the parent if need be, i.e., if someone forgets to pick the child up after school. School districts do not want the children to have the phones at all **because the students tend to misuse the phones, i.e., to call friends during school, to cheat, to engage in illegal activity, etc**. While the school districts believe that children should be relegated to only using the school phones if the children need to contact a parent, the parents want the children to have the phones with them in case they get locked out of the school, get lost on a field trip, etc. '559 Patent at 12:48-62 (emphasis added).

The Asserted Patent therefore recognizes that it is advantageous to dispose the policies applied for effecting feature management over communication devices in accordance with a scheme that prevents access to them by the user of the device, who may have poor judgment or be motivated to otherwise misuse the communication device.

18.     The specification the Asserted Patent discloses, among other innovations, systems and methods for providing access to desirable features, such as always allowing for calls to a parent, for example, while also preventing access to features deemed

6

inappropriate because of cost (e.g., downloadable games or other applications), type of content (e.g., gambling or pornographic content), the time of day or night (e.g., during school hours or after bed time), and/or the device's location, among other criteria. See, e.g., the '559 Patent at 3:54-59; 4:11-18; 5:45-50; 13:8-28; and, Claims. The Asserted Patent discloses control embodiments applying decisions based upon policies defining acceptable and unacceptable uses of a mobile communication device. The policies may be based on a variety of contexts which are set by administrators (e.g., parents or teachers). In accordance with certain embodiments of the inventions disclosed, the policies are set and stored at the server level to provide simultaneous control over use of one or more mobile communication devices. See, e.g., the '559 Patent at embodiment of Fig. 2; 3:54-59; 4:11-18; 5:45-50; 13:8-28; and, Claims. The intrinsic record states this at Office Action Response dated October 17, 2013 filed during prosecution of the '559 Patent at p. 10 (distinguishing a particular embodiment claimed therein on the basis that the prior art "does not describe a *distributed architecture where policy decisions are performed at the server level* and those policies are enforced on the phone itself.")(emphasis added). A true and correct copy of this Office Action Response is attached hereto as Exhibit B and incorporated for all purposes.

19.     Application of use decisions based upon a policy stored remote from the controlled computing device represented an unconventional scheme that was neither well known nor routine for addressing a newly emerging problem in society. Embodiments of the inventions disclosed and claimed in the Asserted Patent implementing this unconventional scheme provide for more robust control that was more resilient to

7

manipulation and/or disablement by users of the controlled devices and, therefore, more effective than prior art systems and methods.

20.     McAfee is a developer of software-based solutions accommodating feature management of computing devices configured for operation on communication networks, including laptops, tablets, smartphones, and the like.  Each of the devices managed by McAfee's software comprises a computing device usable to access online content and applications over a communication network managed by a service provider, such as an internet service provider (ISP).

21.     The Accused Products of McAfee include all versions of the McAfee Safe Family product (including the Safe Family app), as well as all versions of the Total Protection or McAfee Antivirus products that include the Safe Family product or similar functionality.  The Accused Products accommodate management of mobile communication devices accessing content over communication networks via application of remotely stored master policies set by administrators (e.g., parents).

22.     The Accused Products comprise a system of hardware (McAfee servers) and software (McAfee server software and the Safe Family app) implementable on computing devices to accommodate management of certain features and functionality of computing devices.  The Accused Products are compatible for use with communications devices utilizing iOS, Android, and Windows operating systems.  Such devices include iPhones, iPads, Android phones, Android tablets, laptops, Chromebooks, and the like.

23.     The Accused Products effect policy-based control over these devices via, among other things, executing local agent software (the McAfee Safe Family app) on the device in connection with execution of McAfee server software.  Execution of local agent

software effects control of the device via regular and/or scheduled sending of feature use requests to the McAfee servers for policy application.  Additionally, or alternatively, the local agent software effects control via regular installation and updates of use decisions based upon master policies stored on McAfee's servers (or derivatives thereof) via communication with the McAfee servers for on-device enforcement.

24.     Regardless of the mode of policy application employed, all master policies defining permissible or impermissible uses of a device are set by parents using the Safe Family app downloaded on a parent's mobile device and when logged in as administrator. Parents may set policies to control their children's time usage limits or application usage among other things. Different policies may be applied depending on the time-of-day in accordance with schedules or according to time usage limits.

25.     Application of policies yields decisions defining what device features and network content are usable or accessible by a managed device. McAfee accommodates selectively permitting or blocking access to device features, such as Internet content, mobile applications, and the like based on application of allow/disallow policies, which may be further configured in accordance with schedule-based or time-based policies.

26.     For each managed device, local agent software of the Accused Products is enabled on the device in the form the McAfee Safe Family app.  Execution of the local agent software causes the managed device to generate or direct requests for uses of the device for comparison to applicable usage policies, or derivatives thereof, in connection with applying and enforcing master policies defining permissible uses of the managed device.

9

27.    Upon information and belief, the Accused Products effect feature management over devices connected to a communication network without storing the master policies on the devices, themselves or accessing the policies by the device. Rather, decisions based on the policies are communicated to or stored on the controlled device for enforcement, with such decisions regularly updated through execution of the McAfee Safe Family app locally and at McAfee's servers.

28.    Based on the description of the structure and operation of the Accused Products of McAfee presented above, each meets each and every limitation of claim 1 as shown in the following chart:

| Claim Element | Accused Products |
|---|---|
| A non-transitory computer readable storage medium comprising instructions that, when executed on a computing device configured to perform a function on a communication network managed by a service provider, cause the computing device to at least: | McAfee provides the Safe Family mobile application as a standalone product, as well as an add-on to its Total Protection and McAfee Antivirus products.  When downloaded to a computing device for management thereof, Safe Family implements functionality allowing parents and/or other administrators to effect policy-based control over computing devices. <br><br> These Accused Products manage use of mobile devices, such as phones, tablets, and the like, which are connected to the Internet through an Internet Service Provider (ISP) or a cellular network via a phone service provider. |
| send to a server a request to communicate with a remote computing device over the communication network; | When a user of the computing device attempts to use the device to communicate with another, local agent software on the controlled device (the Safe Family mobile application) cause it to formulate requests and route them to one or more McAfee servers to apply policies. |
| receive in real-time from the server a | Following receipt of a request at a McAfee |

| | |
|---|---|
| response indicative of a decision granting or denying the request, the decision being based on one or more policies that are stored at the server and based at least in part on input from an administrator; and | server, the Accused Products provide instructions to the computing device to either permit a requested use or block it, based upon application of applicable policies for that device that are stored at a McAfee server. These policies are configured by a parent, or other administrator, using a "parent device" accessing McAfee's server(s) to set and store policies.  As such, all policies upon which use decisions are based are stored at a McAfee server. |
| enforce the response by enabling the requested communication with the remote computing device over the communication network when the decision grants the request and by disabling the requested communication when the response denies the request, the requested communication being enabled or disabled without accessing the one or more policies by the computing device. | Based on the decision received from McAfee's server(s) applying the policy, the Accused Products operate to either permit or block the requested function.  Permissible requests are then executed by the computing device while blocked requests result in a block screen or alert being shown on the computing device.<br><br>The policy, or policies, set by an administrator and upon which the decision is based are set and stored on McAfee's servers and are inaccessible by managed computing device, itself, for modification. |

> **Formatted:** No bullets or numbering

29.    Based on the description of the structure and operation of the Accused Products of McAfee presented above, each meets each and every limitation of claim 27 as shown in the following chart:

| Claim Element | Accused Products |
|---|---|
| A method for controlling a computing device configured to execute a function using a communication network managed by a service provider, the method comprising: | McAfee provides the Safe Family mobile application as a standalone product, as well as an add-on to its Total Protection and McAfee Antivirus products.  Safe Family implements functionality allowing parents and/or other administrators to effect policy-based control over computing devices. These Accused Products manage use of mobile devices, such as phones, tablets, and the like, which are connected to the Internet through an Internet |

| | |
|---|---|
| | Service Provider (ISP). |
| sending to a server a request to communicate with a remote computing device over the communication network; | The Accused Products utilize local agent software on the controlled device (the Safe Family mobile application) to formulate and route requests through one or more McAfee servers to apply policies. McAfee servers store and apply acceptable use policies, including screen time allowance, among others, which are set by administrators, to control device use. McAfee's local agent software causes actions taken and content viewed on a managed device to be routed through one or more McAfee servers, which apply policies to determine if a requested use is permitted or not. |
| receiving in real-time from the server a decision granting or denying the request, the decision based on a policy stored at the server and configured by an administrator; and | Following receipt of a request at a McAfee server, the Accused Products provide instructions to the computing device to either permit a requested use or block it, based upon application of applicable policies for that device that are stored at a McAfee server. These policies are configured by a parent, or other administrator, using a "parent device" accessing McAfee's server(s) to set and store policies.  As such, all policies upon which use decisions are based are stored at a McAfee server. |
| enforcing the decision by enabling a communication with the remote computing device over the communication network when the decision grants the request and by disabling the communication when the decision denies the request, the communication being enabled or disabled without storing the policy on the computing device. | Based on the decision received from McAfee's server(s) applying the policy, the Accused Products operate to either permit or block the requested function.  Permissible requests are then executed by the computing device while blocked requests result in a block screen or alert being shown on the computing device.<br><br>The policy, or policies, set by an administrator and upon which the decision is based are set and stored on McAfee's servers rather than being set and stored on the managed computing device, itself. |

27.

Formatted: Indent: Left:  0.5",  No bullets or numbering

McAfee provides instructions to its customers and users of the Accused Products demonstrating how to install, set up, and use each to manage computing devices connected to a communications network.  Such instructions are provided in the form of, at least, McAfee's online support site at the URL: https://support.mcafee.com/webcenter/portal/supportportal/pages_knowledgecenter. More specifically, McAfee provides several Safe Family "how to" articles instructing customers on how to install Safe Family, set up profiles, and add devices:

28. https://service.mcafee.com/webcenter/portal/cp/home/faq?term=*&platform=mobile&facet=install%2funinstall&mode=searchall&fsource=Knowledge+Base&_afrLoop=143420526842217#!%40%40%3F_afrLoop%3D143420526842217%26centerWidth%3D100%2525%26facet%3Dinstall%252Funinstall%26fsource%3DKnowledge%2BBase%26leftWidth%3D0%2525%26mode%3Dsearchall%26notShowBreadcrumb%3Dtrue%26platform%3Dmobile%26rightWidth%3D0%2525%26showFooter%3Dfalse%26showHeader%3Dfalse%26term%3D*%26_adf.ctrl-state%3D12iqijqqhx_167.          These resources provide instructions and tutorials directed to end users of the Accused Products demonstrating use thereof in manners that infringe the Asserted Patent.   Use of the Accused Products in accordance with these instructions constitutes direct infringement of the Asserted Patent by end users of the Accused Products.

Formatted: Normal, Indent: First line: 0.5", No bullets or numbering

29.30. McAfee has had actual knowledge of the Asserted Patent and Kajeet's infringement allegations since at least January 4, 2021 the filing of this complaint, therefore, and has had actual knowledge of Kajeet's claims of infringement relating to the Accused Products since that timethe date the Original Complaint was filed.   Upon

information and belief, McAfee continues to make, use, and sell the Accused Products, including ongoing subscriptions, to its customers.

**COUNT I**

**PATENT INFRINGEMENT**

**U.S. Patent No. 8,667,559 B1**

30.31. Kajeet repeats and re-alleges all preceding paragraphs of this First Amended Complaint, as though fully set forth herein.

31.32. On March 4, 2014, United States Patent No. 8,667,559 B1 ("the '559 Patent") was duly and legally issued for "Feature Management of a Communication Device." As of the filing of this Complaint, the '559 Patent remains in force. A true and correct copy of the '559 Patent is attached hereto as Exhibit A and made a part hereof.

33. Kajeet is the owner of all right and title in the '559 Patent, including all rights to enforce and prosecute action for infringement of the '559 Patent and to collect damages for all relevant times against infringers of the '559 Patent. Accordingly, Kajeet possesses the exclusive right and standing to prosecute the present action for infringement of the '559 Patent by McAfee.

32.34. Kajeet has complied with 35 U.S.C. § 287 with respect to the '559 patent. Kajeet virtually marks its products in accordance with the statute by listing the appropriate Kajeet patent numbers on a page on its website. Kajeet regularly updates this page as new patents issue. That page can be accessed at the URL: https://www.kajeet.net/company/patents-and-licensing. Kajeet is unaware of any credible challenge to its having complied with the marking provisions of 35 U.S.C. § 287.

33.35.  The '559 Patent generally discloses and claims systems and methods for controlling computing devices usable on communication networks to perform various functions, such as sending and receiving data over the Internet or other communication network, for example.  The systems and methods claimed accommodate enforcement of decisions granting or denying requests to communicate with remote computing devices over a communication network.—.  In accordance with the Asserted Claims, tThe decisions are based on the application of one or more relevant use policies which may are be administrator-configurable and may be stored remotely from the controlled computing device.  Decisions to grant or deny communication requests from the controlled device may be made and effectuated in real-time.

34.36.  Independent claim 27 of the '559 Patent and each dependent claim depending therefrom are directed to "methods for controlling a computing device configured to execute a function using a communication network managed by a service provider."  '559 Patent at Claim 27.  These claimed methods require, among other steps, that a decision is received in real time from a server, with the decision "being based on a policy stored at the server…," and that "the communication being enabled or disabled without storing the policy on the computing device."  *Id.*

35.37.  These limitations mandate that the decision applied to effect control over the computing device is based on a policy stored at a server remote from the computing device.  The decision is made upon detection of an attempt by the computing device to perform a function on the communication network.  These limitations capture the distributed architecture concept <u>not</u> well-understood, routine, or conventional in the art for effecting feature management on a computing device including that the server storing

15

the policies upon which decisions are based being meaningfully apart from the computing device. This arrangement resulted in improved operation through at least increased resilience to undesirable access to policies to manipulate or delete them.

36.38. These limitations additionally cover communications initiated by a third-party device and directed to a managed device. Effecting control over these incoming communications to a communication device was likewise not well-understood, routine, or conventional to one of ordinary skill in the art.

37.39. Claim 27 of the '559 Patent and each claim depending therefrom are rooted in control schemes for managing communication devices and require the application of decisions based upon remotely stored polices. Remote storage of the policies upon which decisions are based makes them less vulnerable to manipulation and deletion while still accommodating real-time control concurrent with device usage. Communication device management in accordance with these claimed methods improves the security, effectiveness, and robustness of control accommodated. As such, the claimed methods are directed to patent eligible subject matter.

38.40. Additionally, when considered as an ordered combination of elements, claim 27 and each claim depending therefrom comprise an "inventive concept" for at least the reasons presented herein and above. These claims require storing usage policies upon which decisions are based at a server remote from the computing device, an unconventional arrangement at the time which yielded improvements in the operation of systems implementing the claimed methods. Prior art control was not premised on application of decisions based upon policies stored at the server level. Instead, the prior art applied decisions based on policies set up on the computing device itself and stored

16

only on the computing device.  Such policies reside such that they are readily accessible for manipulation and/or deactivation or deletion to circumvent control entirely.  Further, prior art systems required that each device be configured separately and individually with its own set of policies.  The arrangement claimed in claim 27 and its dependent claims run counter to what was well-understood, routine, and conventional to one of ordinary skill in the art at the relevant time by applying usage decisions to effect control that are based upon policies stored at the server level, remote form the computing device, while effecting real-time control over communication devices and providing other benefits, as noted herein and above.[2]

39.41.  Additionally, claim 1 of the '559 Patent, and correspondingly the dependent claims thereof, are directed to similarly configured systems and methods for effecting remote management of communications devices.  These claims implement a distributed architecture approach with master policies applied to effect control of a device being stored remotely from the managed devices.

40.42.  McAfee has had actual knowledge of the existence of the '559 Patent since at least January 4, 2021, the date of the filing of this the Original Ceomplaint.  As such, McAfee's infringement of the '559 Patent has been willful since at least that time.

41.43.  McAfee, without authority, consent, right, or license, and in direct infringement of the '559 Patent, makes, has made, uses, and sells the Accused Products which infringe at least claims 1 and 27 of the '559 Patent, among others, and it uses the

---

[2] These statements are further supported by the declarations of Dr. Charles D. Knutson, which were attached by Kajeet as Exhibits E and I to its Second Amended Complaint (Dkt. Nos. 146, 146-6, and 146-10). filed in the action styled *Kajeet, Inc. v. Qustodio, LLC*, case no. 8:18-cv-01519-JAK-PLA, in the United States District Court for the Central District of California, Western Division, and which are hereby incorporated by reference.

**Formatted:** Font: 12 pt

**Formatted:** Font: 12 pt

Accused Products in a manner that meets every limitation of claims 1 and 27. ~~In addition,~~ McAfee's quality testing and demonstrations of operation of the Accused Products to manage use of computing devices directly infringe, either literally or under the doctrine of equivalents, at least claims 1and 27 of the '559 Patent.

~~42.~~44.   McAfee actively induces infringement of one or more of the claims of the '559 Patent by its customers and end users of at least the Accused Products and is therefore liable for indirect infringement under 35 U.S.C. § 271(b).  A customer's use of the Accused Products to manage computing devices in the manners described above infringes at least claims 1 and 27 of the '559 Patent.  McAfee knows that the Accused Products are especially designed for and marketed toward infringing use by McAfee's customers, to implement feature management of computing devices.   McAfee has induced, caused, urged, encouraged, aided and abetted its direct and indirect customers to make, use, sell, offer for sale and/or import one or more of the Accused Products. McAfee provides step-by-step instructions for installation, setup, and use of the Accused Products to infringe, either literally or under the doctrine of equivalents, at least claims 1 and 27 of the '559 Patent.  These instructions are provided by McAfee as user manuals and online content made available by McAfee through its website, including the SafeFamily "how to" videos described above.  As such, McAfee provides step by step instructions to on how to install and set up the Accused Products to operate as described in the charts above. McAfee likewise provides customers with information about the types of policies that can be set by a parent and how they are set.  Such conduct by McAfee was intended to and actually did result in direct infringement by McAfee's direct and indirect customers, including the making, using, selling, offering for sale and/or

importation of the Accused Products in the United States. McAfee knows that its customers are infringing because it operates the servers that store the policies and communicate with the managed devices.

45.    McAfee contributes to the infringement of at least claims 1 and 27 of the '559 Patent by its customers and end users of at least the Accused Products and is therefore liable for indirect infringement under 35 U.S.C. § 271(c).  The Accused Products are especially designed for controlling use of computing devices in the manner described above.  As shown in the charts above, the components in the Accused Products that provide the infringing features have no other purpose than to operate in an infringing manner.  Upon information and beliefConsequently, the Accused Products have no substantial non-infringing use, as they are specifically designed and marketed for use by parents, teachers, and supervisors to control use of a computing device operating on a communication network.  Setup and use of the Accused Products by McAfee's customers in the manner constitutes direct infringement, either literally or under the doctrine of equivalents, of at least claims 1 and 27 of the '559 Patent. McAfee knows that its customers are infringing because it operates the servers that store the policies and communicate with the managed devices.

43.

44.46.  Kajeet expressly reserves the right to assert additional claims of the '559 Patent against McAfee.

45.47.  Kajeet has been damaged as a result of McAfee's infringing conduct. McAfee is, thus, liable to Kajeet in an amount that adequately compensates for their

19

infringement, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

46.48.  Based on McAfee's actual knowledge of the '559 Patent and of Kajeet's allegations of patent infringement presented herein since at least January 4, 2021, the date of the filing of theis Original Complaint, if not earlier, as well as McAfee's objective recklessness in continuing to offer for sale and selling the Accused Products since that time, Kajeet is further entitled to enhanced damages under 35 U.S.C. § 284.

## VI.  JURY DEMAND

47.49.  Plaintiff hereby requests a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## VII.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court find in its favor and against Defendant, and that the Court grant Plaintiff the following relief:

a.    Judgment that one or more claims of the Asserted Patent have been directly infringed, either literally or under the doctrine of equivalents, by Defendant, or judgment that one or more of the claims of the Asserted Patent have been directly infringed by others and indirectly infringed by Defendant, to the extent Defendant contributed to or induced such direct infringement by others;

b.    Judgment that Defendant account for and pay to Plaintiff all damages to and costs incurred by Plaintiff because of Defendant's infringing activities and other conduct complained of herein, including enhanced damages as permitted by 35 U.S.C. § 284;

20

c.  Judgement that Defendant's infringement is willful from the time Defendant was made aware of the infringing nature of its products and methods and that the Court award treble damages for the period of such willful infringement pursuant to 35 U.S.C. § 284;

d.  That Plaintiff be granted pre-judgment and post-judgment interest on the damages caused by Defendant's infringing activities and other conduct complained of herein;

d.  That the Court declare this an exceptional case and award Plaintiff its reasonable attorney's fees and costs in accordance with 35 U.S.C. § 285; and

e.  That Defendant, its officers, agents, servants and employees, and those persons in active concert and participation with any of them, be permanently enjoined from infringement of one or more claims of the Asserted Patent or, in the alternative, if the Court finds that an injunction is not warranted, Plaintiff requests an award of post judgment royalty to compensate for future infringement;

g.  That Plaintiff be granted such other and further relief as the Court may deem just and proper under the circumstances.


Dated: April 12, ~~January 4,~~ 2021                    Respectfully submitted,

Of Counsel:                                            FARNAN LLP

Jonathan T. Suder                        /s/ Michael J. Farnan
Michael T. Cooke                         Brian E. Farnan (Bar No. 4089)
Corby R. Vowell                          Michael J. Farnan (Bar No. 5165)
Richard A. Wojcio                        919 N. Market St., 12th Floor

21

FRIEDMAN, SUDER & COOKE
604 East 4th Street, Suite 200
Fort Worth, TX 76102
817-334-0400
Fax: 817-334-0401
jts@fsclaw.com
mtc@fsclaw.com
vowell@fsclaw.com
wojcio@fsclaw.com

Wilmington, DE 19801
Telephone: (302) 777-0300
Facsimile: (302) 777-0301
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

*Attorneys for Plaintiff Kajeet, Inc.*

22