**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| KAJEET, INC., | |
| Plaintiff, | |
| v. | C.A. No. 21-cv-00005-MN |
| MCAFEE CORP., | **JURY TRIAL DEMANDED** |
| Defendant. | |

**DEFENDANT MCAFEE CORP.'S BRIEF IN SUPPORT OF MOTION TO DISMISS**
**PLAINTIFF KAJEET, INC.'S FIRST AMENDED COMPLAINT**

Susan E. Morrison (#4690)
FISH & RICHARDSON P.C.
222 Delaware Avenue, 17th Floor
P.O. Box 1114
Wilmington, DE 19899
Tel: (302) 652-5070
morrison@fr.com

Aamir A. Kazi
Christopher O. Green
Fish & Richardson P.C.
1180 Peachtree Street NE, 21st Floor
Atlanta, GA 30309
Tele: 404-724-2811
kazi@fr.com
cgreen@fr.com

*Attorneys for Defendant McAfee Corp.*

Dated: April 26, 2021

<u>**TABLE OF CONTENTS**</u>

I. NATURE AND STAGE OF PROCEEDINGS ................................................. 2

II. SUMMARY OF ARGUMENT ............................................................. 2

III. STATEMENT OF FACTS .................................................................... 3

    A. The '559 Patent ............................................................................. 3

    B. Kajeet's Amended Direct Infringement Allegations ............................... 6

    C. Kajeet's Amended Indirect Infringement Allegations ........................... 9

    D. Kajeet's Amended Willful Infringement Allegations ............................ 9

    E. Kajeet's Amended Pre-Suit Damages Allegations ............................... 10

IV. ARGUMENT ................................................................................... 10

    A. The Direct Infringement Claims in Kajeet's Amended Complaint Should
        Be Dismissed ............................................................................. 11

        1. Kajeet Does Not Allege the Accused McAfee Products Practice Every
            Limitation of Any Asserted Claim ............................................ 12

        2. Kajeet's Direct Infringement Allegations Are Too Vague to Provide
            Notice of How and Why McAfee Allegedly Infringes ............................ 14

    B. The Indirect Infringement Claims in Kajeet's Amended Complaint Should
        be Dismissed ............................................................................. 15

        1. Kajeet's Indirect Infringement Claims Fail Because It Did Not Properly
            Plead Direct Infringement ....................................................... 15

        2. Kajeet's Pre-Suit Indirect Infringement Claims Should Be Dismissed
            Because the Amended Complaint Does Not Allege Pre-Suit Knowledge
            of the '559 Patent .................................................................. 16

        3. Kajeet's Post-Suit Indirect Infringement Claims Should Be Dismissed
            Because the Original Complaint Cannot Serve as the Basis of McAfee's
            Knowledge ......................................................................... 16

    C. The Pre-Suit Willful Infringement Claims in Kajeet's Amended Complaint
        Should Be Dismissed ................................................................... 18

    D. The Past Damages Claim in Kajeet's Amended Complaint Should Be
        Dismissed ................................................................................. 19

E.      Kajeet's Amended Complaint Should be Dismissed with Prejudice .................... 20

V.     CONCLUSION ............................................................................................................. 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arctic Cat Inc. v. Bombardier Recreational Prod. Inc.*,
876 F.3d 1350 (Fed. Cir. 2017).............................................................................19

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).............................................................................10, 11, 15

*Boston Scientific Corp. v. Nevro Corp.*,
415 F. Supp. 3d 482 (D. Del. 2019).............................................................11, 14

*Commil USA, LLC v. Cisco Sys., Inc.*,
135 S.Ct. 1920 (2015).............................................................................15

*Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*,
424 F.3d 1293 (Fed. Cir. 2005).............................................................................15

*Dynamic Data Techs., LLC v. Brightcove Inc.*,
No. 19-1190-CFC, 2020 WL 4192613 (D. Del. July 21, 2020) .............................16

*Express Mobile, Inc., v. DreamHost LLC*,
No. 1:18-cv-01173-RGA, 2019 WL 2514418 (D. Del. Jun. 18, 2019) .............................18, 19

*Global-Tech Appliances, Inc. v. SEB S.A.*,
563 U.S. 754 (2011).............................................................................15

*Kajeet, Inc. v. Qustodio, LLC*,
No. SA CV18-01519 (PLAx) (C.D. Cal. Nov. 1, 2019).............................................6

*Mallinckrodt Inc. v. E-Z-Em Inc.*,
670 F. Supp. 2d 349 (D. Del. 2009).............................................................................15

*NNCrystal US Corp. v. Nanosys, Inc.*,
No. 19-1307-RGA, 2020 WL 616307 (D. Del. Feb. 10, 2020).............................18

*North Star Innovations, Inc. v. Micron Tech., Inc.*,
No. 17-506-LPS-CJB, 2017 WL 5501489 (D. Del. Nov. 16, 2017) ...................11, 12, 13, 14

*Orlando Commc'ns LLC v. LG Elecs., Inc.*,
No. 6:14-cv-1017-ORL, 2015 WL 1246500 (M.D. Fla. Mar. 16, 2015).............................17

*Prowire LLC v, Apple Inc.*,
No. 17-223, 2017 WL 3444689 (D. Del. Aug. 9, 2017).............................................11

*Proxyconn Inc. v. Microsoft Corp.*,
  No. SACV 11-1681 DOC ANX, 2012 WL 1835680 (C.D. Cal. May 16, 2012) ...................17

*Select Retrieval, LLC v. Bulbs.com Inc.*,
  No. 12-10389-TSH, 2012 WL 6045942 (D. Mass. Dec. 4, 2012)...........................................17

*SIPCO, LLC v. Streetline, Inc.*,
  230 F. Supp. 3d 351 (D. Del. 2017)................................................................................11, 14

*SuperInterconnect Techs. LLC v. HP Inc.*,
  No. 19-0169-CFC, 2019 WL 6895877 (D. Del. Dec. 18, 2019) ...........................................14

*Uniloc 2017 LLC v. ZenPayRoll, Inc.*,
  No. 19-1075-CFC-SRF, 2020 WL 4260616 (D. Del. July 23, 2020)....................................12

*Valinge Innovation AB v. Halstead New England Corp.*,
  No. 16-1082-LPS-CJB, 2018 WL 2411218 (D. Del. May 29, 2018) .....................................18

*Via Vadis, LLC v. Skype, Inc.*,
  No. 11-507, 2012 WL 261367 (D. Del. Jan. 27, 2012) .........................................................14

*Zapfraud, Inc. v. Barracuda Networks, Inc.*,
  No. 19-1687-CFC-CJB, 2020 WL 5646375 (D. Del. Sept. 22, 2020)....................................16

*Zapfraud, Inc. v. Barracuda Networks, Inc.*,
  No. 19-1687-CFC-CJB, 2021 WL 1134687 (D. Del. Mar. 24, 2021) ....................................17

**Statutes**

35 U.S.C. § 287.............................................................................................................................10, 19

<u>**INTRODUCTION**</u>

Kajeet, as it did with multiple other defendants, originally sued McAfee under a cookie-cutter patent infringement complaint that failed to map the asserted claims to McAfee's accused products, and thus failed to serve its fundamental purpose: providing fair notice to McAfee of the basis of the claims brought against it. It also failed to plead facts showing any pre-suit knowledge of the patent by McAfee, or that Kajeet had complied with the marking statute. McAfee moved to dismiss the complaint. (D.I. 9.) Recognizing the aforementioned defects, Kajeet responded to McAfee's original motion to dismiss by filing an amended complaint. (D.I. 14.) The amended complaint reflects but only a cursory effort to overcome the aforementioned flaws, and once again fails to meet the *Iqbal / Twombly* pleading standard. First, Kajeet added a claim chart which includes imprecise and high-level descriptions of McAfee's products with no supporting evidence and fails to plausibly allege that McAfee infringes each and every limitation of asserted claims 1 and 27 of U.S. Patent No. 8,667,559 ("the '559 patent"). Second, Kajeet now tries to satisfy the knowledge prong for indirect and willful infringement by citing to McAfee's knowledge of the '559 patent derived from the filing of original complaint, ignoring precedent, including cases from this district, confirming that the mere filing of the original complaint did not impute requisite knowledge. Finally, in support of its pre-suit damages claim, Kajeet has added a few sentences to the amended complaint regarding its marking practices. But here Kajeet misses the mark by failing to plead facts that are legally sufficient to show its compliance with the marking statute.

Kajeet has now tried and failed twice to plead direct infringement, indirect infringement, pre-suit willful infringement, and past damages. Kajeet's inability to plead its case confirms that

there is no factual basis for its claims against McAfee. Accordingly, McAfee respectfully requests that the Court dismiss Kajeet's claims with prejudice.

## I.     <u>NATURE AND STAGE OF PROCEEDINGS</u>

Kajeet filed its original complaint for patent infringement against McAfee on January 4, 2021. (D.I. 1.) On February 25, 2021, McAfee moved to dismiss Kajeet's claims of direct infringement, indirect infringement, willful infringement, and past damages. (D.I. 10.) Effectively conceding that its original complaint was deficient, Kajeet responded by filing an amended complaint on April 12, 2021. (D.I. 14.) But the amended complaint does not correct the deficiencies McAfee identified in the original complaint.

Kajeet's amended complaint accuses McAfee of infringing "at least claims 1 and 27 of the '559 [p]atent." (*Id.* ¶ 43.) Kajeet asserts that "[t]he Accused Products of McAfee include all versions of the McAfee Safe Family product (including the Safe Family app), as well as all versions of the Total Protection or McAfee Antivirus products that include the Safe Family product or similar functionality." (*Id.* ¶ 21.) In addition to direct infringement, Kajeet alleges induced, contributory, and willful infringement by McAfee. (*Id.* ¶¶ 42, 44-45.) Kajeet also appears to be seeking past damages. (*Id.* ¶ 34.)

## II.     <u>SUMMARY OF ARGUMENT</u>

1.     Kajeet's direct infringement claim should be dismissed for failure to satisfy the *Iqbal / Twombly* pleading standard for two distinct reasons. First, Kajeet does not allege that McAfee's complex software products infringe each and every limitation of asserted claims 1 and 27 of the '559 patent. Second, the allegations in the amended complaint remain too high-level and imprecise to provide fair notice to McAfee regarding the basis for Kajeet's direct infringement claim.

2.      Kajeet's indirect infringement claims should also be dismissed.  Because proof of indirect infringement requires proving an act of direct infringement, Kajeet's failure to properly plead direct infringement is also fatal to its indirect infringement claims.  Kajeet's indirect infringement claims are also flawed because Kajeet alleges only that McAfee learned of the '559 patent when the original complaint was filed.  The filing of the original complaint cannot support pre-suit indirect infringement, and Kajeet's post-suit indirect infringement allegations should be dismissed because McAfee's knowledge derived through the filing of the original complaint alone is insufficient to state a claim.

3.      Kajeet's pre-suit willful infringement claim should be dismissed.  Without any allegation of pre-suit knowledge of the '559 patent, Kajeet cannot plead facts showing that McAfee acted with the knowledge required to state a claim for willful infringement.

4.      Any claim for past damages should be dismissed due to Kajeet's failure to sufficiently allege compliance with the marking statute.

## III.    <u>STATEMENT OF FACTS</u>

### A.      The '559 Patent

The '559 patent issued on March 4, 2014 and is titled "Feature Management of a Communication Device."  (D.I. 14, Ex. A.)  According to the '559 patent, as the capabilities of modern communication devices have expanded, there "may be a need or desire to regulate how that communication device can be used and to determine who will pay for what goods and services."  (*Id.* at 1:56-58.)  The '559 patent identifies that parents, school administrators, and employers may want the ability to control and/or restrict how and when children, students, and employees use their cellphones or other electronics devices.  (*Id.* at 1:66-2:26.)

The system disclosed in the '559 patent purports to solve this problem by providing, in a cellular telephone network, a "policy enforcement point (PEP) 28" that contains policies that

determine whether a particular phone may be used for particular purposes. (*Id.* at 8:36-40.) The PEP works in conjunction with a "policy decision point (PDP) 29," which "maintains or stores a list of policies that have been established to control the features and functions of the mobile [device] and decides, based on those policies, to either accept or reject" any attempt by the phone to request service from the network. (*Id.* at 8:40-59.) As can be seen in Figure 2, both the PEP and PDP are parts of the telephone network, and neither resides on the mobile station 10 (*i.e.*, the mobile phone or other user device). (*Id.* at Fig. 2.)

It is this remote enforcement of a remotely stored policy, by accepting or rejecting attempts by the mobile device to communicate over the network, that provides the supposed advantage of the invention: a tamper-proof ability to control network access by a device. Kajeet repeatedly emphasizes this point in its amended complaint when describing the alleged benefits of the claimed invention and how it differed from the prior art:

- "The Asserted Patent therefore recognizes that it is advantageous to dispose the policies applied for effecting feature management over communication devices in accordance *with a scheme that prevents access to them by the user of the device*, who may have poor judgment or be motivated to otherwise misuse the communication device."[1] (*Id.* at ¶ 17.)

- "Application of use decisions based upon *a policy stored remote from the controlled computing device* represented an unconventional scheme that was neither well known nor routine for addressing a newly emerging problem in society." (*Id.* at ¶ 19.)

- "These claimed methods require, among other steps, that a decision is received in real time from a server, with the decision 'being *based on a policy stored at the server . . .*,' and that 'the communication being enabled or disabled *without storing the policy on the computing device*.'" (*Id.* at ¶ 36.)

- "These limitations mandate that the decision applied to effect control over the computing device is *based on a policy stored at a server remote to the computing device . . . .* These limitations capture the distributed architecture concept <u>not</u> well-understood, routine, or conventional in the art for effecting feature management on a computer device including that *the server storing the policies upon which decisions*

---

[1]     All emphases throughout this brief added unless otherwise noted.

*are based being meaningfully apart from the computing device*. This arrangement resulted in improved operation through at least increase resilience to undesirable access to policies to manipulate or delete them." (*Id.* at ¶ 37 (emphasis of "not" in original).)

- "These claims require storing usage policies upon which decisions are based *at a server remote from the computing device*, an unconventional arrangement at the time which yielded improvements in the operation of systems implementing the claimed methods. Prior art control was not premised on application of decisions based upon policies stored at the server level. Instead, *the prior art applied decisions based on policies set up on the computing device itself* and stored only on the computing device. Such policies reside such that they are readily accessible for manipulation and/or deactivation or deletion to circumvent control entirely." (*Id.* at ¶ 40.)

The role of the server in granting or denying requests *in real-time* to communicate with a remote device based on a policy stored at the server is also recited by the asserted claims:

1. A non-transitory computer readable storage medium comprising instructions that, when executed on a computing device configured to perform a function on a communication network managed by a service provider, cause the computing device to at least:

> *send to a server* a request to communicate with a *remote* computing device over the communication network;
>
> *receive in real-time* from the server a response indicative of a decision granting or denying the request, the decision being based on one or more *policies that are stored at the server* and based at least in part on input from an administrator; and
>
> enforce the response by enabling the requested communication with the *remote* computing device over the communication network when the decision grants the request and by disabling the requested communication when the response denies the request, the requested communication being enabled or disabled *without accessing the one or more policies* by the computing device.

* * *

27. A method for controlling a computing device configured to execute a function using a communication network managed by a service provider, the method comprising:

> *sending to a server* a request to communicate with a *remote* computing device over the communication network;

> receiving **in real-time** from the server a decision granting or denying the request, the decision being **based on a policy stored at the server** and configured by an administrator; and
>
> enforcing the decision by enabling a communication with the **remote** computing device over the communication network when the decision grants the request and by disabling the communication when the decision denies the request, the communication being enabled or disabled **without storing the policy on the computing device**.

(D.I. 14, Ex. A at claims 1, 27).  In addition to requiring a remote server that regulates communication requests from a device based on a policy, the claim further requires that (i) the server applies the policy to provide, "in real-time," a "decision[s] granting or denying" such requests, and (ii) that the policy that determines whether to grant or deny a request is not stored on, nor is it accessed by, the computing device itself.

This plain meaning is further confirmed by the court's claim construction order in *Kajeet, Inc. v. Qustodio, LLC*, No. SA CV18-01519 (PLAx) (C.D. Cal. Nov. 1, 2019) at 13 (attached hereto as Exhibit A).  In concluding that claim 27 of the '559 patent should be given its ordinary meaning, the court observed that "[t]he requirement that **both storing a policy and enforcing a decision occur remotely** is apparent from the express claim language . . . . Because the parties cannot reasonably dispute that the plain claim language that shows that the claimed policy and claimed enforcement step in Claim 27 of the '559 Patent occur remote from the computing device, no further construction of these claim terms is necessary." *Id.*

### B.  Kajeet's Amended Direct Infringement Allegations

Kajeet's original complaint did not make any attempt to map the features of the Accused Products to the limitations of any asserted claim, nor did it allege that McAfee practices each step of the claimed method.  In the Background and Facts section of the original complaint, Kajeet provided a high-level description of the Accused Products without reference to the '559 patent.  (D.I. 1 at ¶¶ 21-27.)  Then, in Count I of the original complaint, Kajeet summarized the

requirements and alleged benefits of claims 1 and 27 of the '559 patent without any reference to the Accused Products. (*Id.* at ¶¶ 30-40.) As a result, Kajeet's direct infringement allegations lacked information from which McAfee could understand the nature of the allegations against it.

Kajeet has purported to remedy its direct infringement allegations by making two substantive changes to the amended complaint. First, Kajeet added the claim charts for claims 1 and 27 to the Background and Facts section. (*Id.* ¶¶ 28-29.) But like the original complaint, the claim charts are nebulous and imprecise, lacking any concrete description of identifiable features of the McAfee Accused Products, quotations from McAfee product literature, or screen shots of McAfee product display screens.

Underscoring that these charts fail to provide proper notice, Kajeet's allegations against McAfee are substantively identical to its allegations against Mosyle. In both cases, Kajeet's chart paraphrases the words of the claim in a slightly different way and alleges infringement. The chart below compares Kajeet's theories against McAfee and Mosyle:

| Claim Element | Allegations against McAfee | Allegations against Mosyle |
|---|---|---|
| 27. A method for controlling a computing device configured to execute a function using a communication network managed by a service provider, the method comprising: | McAfee provides the Safe Family mobile application as a standalone product, as well as an add-on to its Total Protection and McAfee Antivirus products. Safe Family implements functionality allowing parents and/or other administrators to effect policy-based control over computing devices. These Accused Products manage use of mobile devices, such as phones, tablets, and the like, which are connected to the Internet through an Internet Service Provider (ISP). | Mosyle provides the Mosyle Manager, Mosyle Business, and ScreenGuide products which allow parents and/or other administrators to effect policy based control over computing devices. The Accused Products manage use of mobile devices, such as phones, tablets, and the like, which are connected to the Internet through an Internet Service Provider (ISP). |
| sending to a server a request to communicate with a remote | The Accused Products utilize local agent software on the controlled device (the Safe Family mobile application) to | The Accused Products utilize local agent software on the controlled device to formulate and route requests through one |

| computing device over the communication network; | formulate and route requests through one or more McAfee servers to apply policies. McAfee servers store and apply acceptable use policies, including screen time allowance, among others, which are set by administrators, to control device use. McAfee's local agent software causes actions taken and content viewed on a managed device to be routed through one or more McAfee servers, which apply policies to determine if a requested use is permitted or not. | or more Mosyle servers. Mosyle's servers store and apply acceptable use policies, including screen time allowance, among others, which are set by administrators, to control device use. Mosyle's local agent software causes actions taken and content viewed on a managed device to be routed through one or more Mosyle servers |
|---|---|---|
| receiving in real-time from the server a decision granting or denying the request, the decision based on a policy stored at the server and configured by an administrator; and | Following receipt of a request at a McAfee server, the Accused Products provide instructions to the computing device to either permit a requested use or block it, based upon application of applicable policies for that device that are stored at a McAfee server. These policies are configured by a parent, or other administrator, using a "parent device" accessing McAfee's server(s) to set and store policies. As such, all policies upon which use decisions are based are stored at a McAfee server. | The Accused Products either permit requested usage or block it in accordance with the decision received from a Mosyle network server making policy decisions. Rules, such as time usage limits and application rules are configured by administrators (i.e., parents, teachers, business owners) via a web dashboard interface and are stored on Mosyle's servers. Rules are applied in real time to allow / disallow use of various functions on the managed device. |
| enforcing the decision by enabling a communication with the remote computing device over the communication network when the decision grants the request and by disabling the | Based on the decision received from McAfee's server(s) applying the policy, the Accused Products operate to either permit or block the requested function. Permissible requests are then executed by the computing device while blocked requests result in a block screen or alert being shown on the computing device.

The policy, or policies, set by an | Based on the decision received from Mosyle's server(s) applying the policy, the Accused Products operate to either permit or block the requested function.

The policy, or policies, upon which the decision is based are set and stored on Mosyle's servers and not on the  managed device |

| | | |
|---|---|---|
| communication when the decision denies the request, the communication being enabled or disabled without storing the policy on the computing device. | administrator and upon which the decision is based are set and stored on McAfee's servers rather than being set and stored on the managed computing device, itself. | |

(D.I. 14 at ¶¶ 28, 29.)  Second, Kajeet added to Count I the conclusory assertion that McAfee "uses the Accused Products in a manner that meets every limitation of claims 1 and 27." (*Id.* at ¶ 43.)  But this is simply a legal conclusion without any underlying factual allegations sufficient to state a claim for direct infringement of a product or method claim.

### C. Kajeet's Amended Indirect Infringement Allegations

As in the original complaint, Kajeet's amended complaint alleges induced infringement and contributory infringement by McAfee.  These allegations remain entirely generic and conclusory.  They lack any specific assertions concerning McAfee or its business that would show that McAfee induces or contributes to direct infringement of any claim by others.  More importantly, however, Kajeet again fails to satisfy the knowledge requirement for indirect infringement.  Kajeet does not allege any pre-suit knowledge of the asserted patents by McAfee, and instead points to the filing of the original complaint to show knowledge.  (*Id.* at ¶ 30, 42.)

### D. Kajeet's Amended Willful Infringement Allegations

Kajeet's willful infringement allegations are contained in the following two paragraphs, which have been modified as shown below in the amended complaint.

- "McAfee has had actual knowledge of the Asserted Patent ~~since at least the filing of this complaint, therefore, and has had actual knowledge of Kajeet's claims of infringement related to the Accused Products since that time~~ <u>and Kajeet's infringement allegations against the Accused Products since at least January 4, 2021, the date the Original Complaint was filed</u>."  (D.I. 14 at ¶ 30; D.I. 1 at ¶ 29 (similar).)

- "McAfee has had actual knowledge of the existence of the '559 Patent ~~since at least the filing of this complaint~~ and Kajeet's infringement allegations against the Accused Products since at least January 4, 2021, the date the Original Complaint was filed. As such, McAfee's infringement of the '559 Patent has been willful since at least that time."  (D.I. 14 at ¶ 42; D.I. 1 at ¶ 40 (similar).)

Kajeet does not allege pre-suit knowledge and fails to provide any specific factual basis for any pre-suit willful infringement claim.

### E.    Kajeet's Amended Pre-Suit Damages Allegations

In support of its pre-suit damages claim, Kajeet's original complaint alleged only that "Kajeet has complied with 35 U.S.C. § 287 with respect to the '559 patent."  (D.I. 1 at ¶ 32.) Kajeet has supplemented its pre-suit damages allegations in the amended complaint by adding the following: "Kajeet virtually marks its products in accordance with the statute by listing the appropriate Kajeet patent numbers on a page on its website.  Kajeet regularly updates this page as new patents issue.  That page can be accessed at the URL: http://www.kajeet.net/company/patents-and-licensing.  Kajeet is unaware of any credible challenges to its having complied with the marking provisions of 35 U.S.C. § 287."  (D.I. 14 at ¶ 34.)  But even accepting this allegation as true, it is insufficient to plausibly show that Kajeet has complied with the marking statute because there is no allegation that Kajeet requires the cited URL to be marked on its licensed or otherwise practicing products, as expressly required by the marking statute.

## IV.    <u>ARGUMENT</u>

It is well established that a plaintiff must allege factual support for each element of the claim to adequately plead a claim.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007))).  In this regard, merely reciting the elements of a claim and providing "conclusory statements" without further factual support is insufficient.  *Id.* ("Threadbare recitals

of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

The purpose of these pleading requirements is (i) to show that the plaintiff has some basis for its

allegations, and (ii) to put the defendant on fair notice of the claims at issue. *See Id.* at 698;

*Twombly*, 550 U.S. at 555 (explaining a complaint must "give the defendant fair notice of what

the … claim is and the grounds upon which it rests" (citation omitted)).

A.      **The Direct Infringement Claims in Kajeet's Amended Complaint Should Be
        Dismissed**

Courts apply the *Twombly/Iqbal* standard when evaluating the sufficiency of direct

infringement claims. *Prowire LLC v, Apple Inc*., No. 17-223, 2017 WL 3444689, at *2 (D. Del.

Aug. 9, 2017).  To meet these standards, a complaint must "plead[] facts that plausibly indicate

that Defendant's accused products practice each of the limitations found in the [] asserted claims

. . . After all, if it is not plausible, after reading the complaint, that the accused infringer's

product reads on a limitation in the one asserted claim from a patent-in-suit, then it is not

plausible that the accused infringer actually infringes the patent claim (or the patent)." *North

Star Innovations, Inc. v. Micron Tech., Inc.*, No. 17-506-LPS-CJB, 2017 WL 5501489, at *1 (D.

Del. Nov. 16, 2017) (citation omitted), report and recommendation adopted, 2018 WL 11182741

(D. Del. Jan. 3, 2018).

Accordingly, "a patentee cannot meet its obligation to assert a plausible claim of

infringement under the *Twombly/Iqbal* standard by merely copying the language of a claim

element and then baldly stating (without more) that an accused product has such an element." *Id.*

at *2; *SIPCO, LLC v. Streetline, Inc.*, 230 F. Supp. 3d 351, 353 (D. Del. 2017) (dismissing

complaint which "contain[ed] no attempt to connect anything in the patent claims to anything

about any of the accused products"); *Boston Scientific Corp. v. Nevro Corp.*, 415 F. Supp. 3d

482, 489 (D. Del. 2019) (explaining "a plaintiff must generally do more than assert that the

product infringes the claim; it must show how the defendant plausibly infringes by alleging some facts connecting the alleging infringing product to the claim elements" (emphasis in original)).

1. **Kajeet Does Not Allege the Accused McAfee Products Practice Every Limitation of Any Asserted Claim**

Kajeet's direct infringement claim should be dismissed because the amended complaint lacks any coherent explanation of how McAfee's products meet each of the limitations of an asserted claim. *See Uniloc 2017 LLC v. ZenPayRoll, Inc.*, No. 19-1075-CFC-SRF, 2020 WL 4260616, at *2 (D. Del. July 23, 2020) ("[T]o survive a 12(b)(6) motion, a complaint alleging direct infringement must contain facts plausibly indicating that a defendant's accused product practices each limitation of the asserted patent[.]"); *North Star Innovations*, 2017 WL 5501489 at *1 ("In order to adequately allege direct infringement here, Plaintiff needs to have pleaded facts that plausibly indicate that Defendant's accused products practice each of the limitations found in the two asserted claims[.]").

Claims 1 and 27 each possess the same two key requirements: (i) sending to a server a "request to communicate with a remote computing device" and receiving a "real-time" decision from the server granting or denying the request; and (ii) granting or denying the request based on a policy that is "stored at the server" and not stored "on the computing device." (D.I. 14, Ex. A at claims 1 and 27.) Yet the amended complaint is completely devoid of any explanation of how usage of McAfee's Accused Products results in either of these requirements being met.

***First***, the amended complaint lacks any explanation of how usage of any Accused Product causes a request to communicate with a remote computing device to be sent to a server or a decision in real-time allowing or denying the request to be received. For example, in its newly-added chart for claim 27, Kajeet alleges that the local agent "formulate[s] and route[s] [unspecified] requests through one or more McAfee servers" which "store and apply acceptable

use policies including screen time allowance, among others." (D.I. 14 at ¶ 29.)  But routing unspecific "requests" through one or more McAfee servers that store policies such as "screen time allowance" has nothing to do with "sending to a server a request to communicate with a remote computing device" as required by the claim.  No "remote computing device" with which communication is desired is identified nor even implied by Kajeet's alleged facts.

***Second***, the amended complaint lacks any explanation of how the McAfee Accused Products supposedly enforce a policy stored on a server "without storing the policy on the computing device," as required by claim 27.  Kajeet's chart for claim 27 makes the unsupported and generic assertion that "[t]he policy, or policies, set by an administrator and upon which the decision is based are set and stored on McAfee's servers rather than being set and stored on the managed computing device, itself." (*Id.*)  Kajeet takes the same tack with claim 1 and its requirement that "the requested communication" is either "enabled or disabled without accessing the one or more policies by the computing device."  There, Kajeet effectively does no more than parrot back the claim language by stating "the policy, or policies, set by an administrator and upon which the decision is made … are inaccessible by managed computing device, itself, for modification." (*Id*. at ¶ 28, Claim 1 Chart.)  In both instances, this is nothing more than "baldly stating (without more) that an accused product has such an element." *North Star Innovations*, 2017 WL 5501489 at *2.  While the amended complaint alleges the existence of supposed "master policies" stored on McAfee's servers (*Id.* at ¶ 23), there is no allegation that any ***real-time*** decisions granting or denying access to a remote computing device are made using these "master policies," and thus the corresponding requirements in claims 1 and 27, respectively, for claimed "policies that are stored at the server"/"policy stored on the server" are satisfied.

### 2. Kajeet's Direct Infringement Allegations Are Too Vague to Provide Notice of How and Why McAfee Allegedly Infringes

Even where a complaint does allege that each claim limitation is met by the accused products (which Kajeet's amended complaint does not), courts grant motions to dismiss if the allegations are too conclusory to put the defendant on notice regarding how and why they supposedly infringe. For example, courts in this district frequently dismiss complaints that simply parrot the claim language and then include a conclusory statement that the defendant infringes. *See, e.g.*, *SIPCO*, 230 F. Supp. 3d at 353 (dismissing direct infringement claims where plaintiff alleged "here are ten patents we own," "you sell some products, which we have identified," and "the sales of your products infringe our patents"); *North Star Innovations*, 2017 WL 5501489 at *1 (dismissing direct infringement allegations because the complaint "does little more than parrot back the language of [the asserted] claim elements and then states that the accused product is comprised of such elements"). Similarly, courts in this district dismiss complaints that lack factual allegations describing how or why the defendant infringes. *See, e.g.*, *Via Vadis, LLC v. Skype, Inc.*, No. 11-507, 2012 WL 261367, at *2 (D. Del. Jan. 27, 2012) (dismissing direct infringement claims because "[t]here are simply no factual allegations advising Defendants how or why their products infringe on Plaintiff's patents"); *Boston Scientific*, 415 F. Supp. 3d at 490 (dismissing direct infringement claims because plaintiff "makes no attempt to connect specific components of the accused systems to elements of the asserted claims"); *SuperInterconnect Techs. LLC v. HP Inc.*, No. 19-0169-CFC, 2019 WL 6895877, at *2, n.3 (D. Del. Dec. 18, 2019) (noting that where "the technology is far from simple" conclusory allegations fail to "provide fair notice of [the] infringement claims").

As in these cases, Kajeet's amended complaint does not contain the "how and why" that is necessary to state a claim for direct infringement. The only comparison between the Accused

Products and claims 1 and 27 in the amended complaint is found in the claim chart.  But in adding the claim chart, Kajeet simply repeated the same types of high-level and conclusory assertions—without citations, quotations, or supporting evidence of any kind—that caused the original complaint to be deficient.  In other words, by simply adding a claim chart that repeats the problematic descriptions of the Accused Products from the original complaint, Kajeet has not provided notice to McAfee of the specific aspects of its products that are accused of infringement.  For this reason, Kajeet's direct infringement allegations are insufficient to state a claim under the *Iqbal / Twombly* standard and should be dismissed.

> **B.** **The Indirect Infringement Claims in Kajeet's Amended Complaint Should be Dismissed**

To state a claim for induced infringement, a plaintiff must allege facts showing that the defendant "knew of the patent and knew as well that the induced acts constitute patent infringement."  *Commil USA, LLC v. Cisco Sys., Inc.*, 135 S.Ct. 1920, 1926 (2015) (citation omitted); *see also Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766 (2011) ("induced infringement under § 271(b) requires knowledge that the induced acts constitute patent infringement").  To state a claim for contributory infringement, a plaintiff must allege facts showing that the defendant "knew that the combination for which its components were especially made was both patented and infringing and that defendant's components have no substantial non-infringing uses."  *Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1312 (Fed. Cir. 2005) (citation omitted).

> **1.** **Kajeet's Indirect Infringement Claims Fail Because It Did Not Properly Plead Direct Infringement**

As an initial matter, Kajeet's indirect infringement allegations fail because Kajeet has not alleged facts showing direct infringement of any claim.  *See Mallinckrodt Inc. v. E-Z-Em Inc.*, 670 F. Supp. 2d 349, 354 (D. Del. 2009) ("Claims for indirect infringement cannot exist in the

absence of direct infringement.").  For the reasons discussed above, Kajeet makes no such showing here and its indirect infringement claims should be dismissed.

### 2. Kajeet's Pre-Suit Indirect Infringement Claims Should Be Dismissed Because the Amended Complaint Does Not Allege Pre-Suit Knowledge of the '559 Patent

The amended complaint does not allege that McAfee had pre-suit knowledge of the '559 patent.  Instead, Kajeet alleges that McAfee became aware of the '559 patent when Kajeet filed its original complaint for patent infringement in this case—*i.e.*, on January 4, 2021.  (D.I. 14 at ¶¶ 30, 42.)  Courts in this district have routinely held that the complaint itself cannot satisfy the knowledge requirement for indirect infringement.  *See, e.g.*, *Zapfraud, Inc. v. Barracuda Networks, Inc.*, No. 19-1687-CFC-CJB, 2020 WL 5646375, at *2 (D. Del. Sept. 22, 2020) ("[A] party cannot plausibly claim in a complaint that its adversary had knowledge of infringement of the patent-in-suit (required for both induced and contributory infringement claims) or had the specific intent to encourage another's infringement (required for an induced infringement claim) when, prior to the very moment that this complaint was filed, its adversary had never actually: (1) been aware of the patent's existence; (2) known that the patent was being infringed; or (3) intended that anyone infringe the patent."); *Dynamic Data Techs., LLC v. Brightcove Inc.*, No. 19-1190-CFC, 2020 WL 4192613, at *3 (D. Del. July 21, 2020) ("[T]he complaint itself cannot be the source of knowledge required to sustain claims of induced infringement." (citation omitted)).  Because Kajeet does not allege pre-suit knowledge of the '559 patent by McAfee, the amended complaint fails to state a claim for pre-suit indirect infringement.

### 3. Kajeet's Post-Suit Indirect Infringement Claims Should Be Dismissed Because the Original Complaint Cannot Serve as the Basis of McAfee's Knowledge

In its amended complaint, Kajeet points to the filing of the original complaint to satisfy the knowledge requirement for post-suit indirect infringement.  (D.I. 14 at ¶¶ 30, 42.)  District

courts are split on the issue of whether an original complaint is sufficient to establish knowledge of an asserted patent for post-suit indirect infringement in a subsequently filed amended complaint.  This Court should follow the line of cases holding that the filing of an original complaint, without more, cannot establish knowledge for post-suit indirect infringement. *Zapfraud, Inc. v. Barracuda Networks, Inc.*, No. 19-1687-CFC-CJB, 2021 WL 1134687 *4 (D. Del. Mar. 24, 2021) ("[the court] will adopt the rule that the operative complaint in a lawsuit fails to state a claim for indirect patent infringement where the defendant's alleged knowledge of the asserted patents is based solely on the content of that complaint *or a prior version of the complaint filed in the same lawsuit*." (emphasis added); *Proxyconn Inc. v. Microsoft Corp.*, No. SACV 11-1681 DOC ANX, 2012 WL 1835680, at *5 (C.D. Cal. May 16, 2012) ("[A] complaint fails to state a claim for indirect patent infringement where the only allegation that purports to establish the knowledge element is the allegation that the complaint itself or previous complaints in the same lawsuit establish the defendant's knowledge of the patent." (emphasis in original)); *Orlando Commc'ns LLC v. LG Elecs., Inc.*, No. 6:14-cv-1017-ORL, 2015 WL 1246500, at *9 (M.D. Fla. Mar. 16, 2015) ("'Prior to suit' does not mean prior to the current iteration of the Complaint.  If, as Plaintiff suggests, failure to allege pre-suit knowledge could be cured merely by filing another complaint (without alleging new facts), then the knowledge requirement would be superfluous."); *Select Retrieval, LLC v. Bulbs.com Inc.*, No. 12-10389-TSH, 2012 WL 6045942, at *6 (D. Mass. Dec. 4, 2012) (holding knowledge obtained from a complaint insufficient to support a claim for post-filing indirect infringement even though the plaintiff was "only pursuing the indirect infringement claims for damages since that first suit was filed").

To hold otherwise would incentivize plaintiffs to file a complaint and then to immediately turn-around and file an amended complaint alleging post-suit indirect infringement

based on knowledge of an asserted patent created by filing the original complaint. Such a result would eviscerate the knowledge requirement for indirect infringement. It is also contrary to the rationale set forth in the cases in Section IV.B.2, *supra*, holding that the complaint itself cannot satisfy the knowledge requirement for indirect infringement. As such, the Court should dismiss Kajeet's post-suit indirect infringement allegations.

### C. The Pre-Suit Willful Infringement Claims in Kajeet's Amended Complaint Should Be Dismissed

To state a claim for willful infringement, a plaintiff "must allege that the accused infringer knew of the patent-in-suit, and knowingly or intentionally infringed the patent after acquiring that knowledge." *NNCrystal US Corp. v. Nanosys, Inc.*, No. 19-1307-RGA, 2020 WL 616307, at *4 (D. Del. Feb. 10, 2020).

Kajeet's pre-suit willful infringement claims should be dismissed because the amended complaint does not allege any pre-suit knowledge of the '559 patent. Courts in this district have held that willful infringement allegations cannot survive a motion to dismiss where the defendant is alleged to have first learned of an asserted patent when the complaint was filed. *See Valinge Innovation AB v. Halstead New England Corp.*, No. 16-1082-LPS-CJB, 2018 WL 2411218, at *12 (D. Del. May 29, 2018) (holding "to state a claim for willful infringement, the patentee must allege facts in its pleading plausibility demonstrating that the accused infringer had committed subjective willful infringement as of the date of the filing of the willful infringement claim"); *Express Mobile, Inc., v. DreamHost LLC*, No. 1:18-cv-01173-RGA, 2019 WL 2514418, at *2 (D. Del. Jun. 18, 2019) (dismissing willful infringement claims because "[t]he complaints allege only post-filing knowledge of the alleged infringement" and thus, "fail to meet the pleading standard for willful infringement, which requires allegations of willful conduct prior to the filing

of the claim").  As such, Kajeet's amended complaint fails to state a claim for pre-suit willful infringement.

### D.        The Past Damages Claim in Kajeet's Amended Complaint Should Be Dismissed

Because Kajeet has asserted product Claim 1 (for a "computer readable storage medium") and reserves the right to assert still other product claims against McAfee, Kajeet has the burden to show that it complied with the patent-marking statute.  *See Arctic Cat Inc. v. Bombardier Recreational Prod. Inc.*, 876 F.3d 1350, 1366 (Fed. Cir. 2017).  As such, courts have held that, at the motion to dismiss stage, "[a] claim for past damages requires pleading compliance with the marking statute—even when compliance is achieved, factually, by doing nothing at all." *Express Mobile*, 2019 WL 2514418 at *2 (dismissing past damages claim due to failure to plead compliance with marking statute).

Kajeet's original complaint simply asserted that it has complied with the marking statute. (D.I. 1 at ¶ 32.)  Kajeet now alleges in the amended complaint that it virtually marks its products by listing the relevant patent numbers on its webpage.  (D.I. 14 at ¶ 34.)  But this factual allegation alone does not make it plausible that Kajeet has complied with the marking statute. This is because Kajeet has failed to allege any facts suggesting that any licensed or otherwise covered products actually include the URL to the relevant webpage, which is an essential requirement to satisfy the virtual marking requirement.  35 U.S.C. § 287 (requiring for virtual marking "fixing thereon the word 'patent' or the abbreviation 'pat.' together with the address of a posting on the Internet, accessible to the public without charge for accessing the address, that associates the patent article with the number of the patent").  Simply listing patents on your website, without marking the corresponding products themselves in some way, is insufficient as a matter of law under the marking statute.  Had Kajeet complied with all of the requirements of

the virtual marking statute, and actually required markings to be placed on its licensed products, it would have been easy for Kajeet to say so. Its failure to do so in this case is thus telling, and makes it implausible that Kajeet actually complied with the statute. For this reason, Kajeet's pre-suit damages claim should be dismissed.

### E. Kajeet's Amended Complaint Should be Dismissed with Prejudice

Kajeet's chosen strategy of filing a minimal complaint wastes the parties' and the Courts' resources. This Court granted an earlier motion to dismiss by Gryphon, which was based on grounds similar to those McAfee raised in its motion against Kajeet's original complaint. *See* D.I. 10. After that order, to save judicial resources required by motion practice, McAfee indicated that Kajeet's Complaint was also deficient, and requested that Kajeet amend its complaint. (Ex. B, Email from Kazi of February 22, 2021.)[2] Kajeet did not respond. Only after McAfee was forced to file its original motion did Kajeet file an amended complaint. Still, as set forth herein, the claim chart Kajeet added to its amended complaint is not specific to McAfee and effectively parrots the claim chart Kajeet included in its amended complaint against Mosyle.

Kajeet has been on notice of the deficiencies in its allegations at least as early as the order in the Gryphon matter and has had multiple opportunities to correct those deficiencies but has elected not to. Thus, McAfee requests that the Court dismiss Kajeet's claims with prejudice.

## V. <u>CONCLUSION</u>

For the foregoing reasons, McAfee respectfully requests that the Court dismiss Kajeet's direct, indirect, and willful infringement claims, as well as its claim for past damages.

---

[2] One of the defects that McAfee has raised on several occasions is that Kajeet named the wrong McAfee entity in its complaints. McAfee is not raising that issue herein. But should McAfee's motion to dismiss be denied, McAfee reserves its right to file a dispositive motion with the Court at the appropriate time.

Dated: April 26, 2021

By: */s/ Susan E. Morrison*
    Susan E. Morrison (#4690)
    FISH & RICHARDSON P.C.
    222 Delaware Avenue, 17th Floor
    P.O. Box 1114
    Wilmington, DE 19899
    PH: (302) 652-5070
    morrison@fr.com

    Aamir A. Kazi
    Christopher O. Green
    Fish & Richardson P.C.
    1180 Peachtree Street NE, 21st Floor
    Atlanta, GA 30309
    PH: (404) 724-2811
    kazi@fr.com
    cgreen@fr.com

**ATTORNEYS FOR DEFENDANT**
**MCAFEE CORP.**