# Exhibit A

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | SA CV18-01519 JAK (PLAx) | Date | November 1, 2019 |
|---|---|---|---|
| Title | Kajeet, Inc. v. Qustodio, LLC | | |

| Present: The Honorable | JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE |
|---|---|
| Andrea Keifer | Not Reported |
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**Proceedings:** **(IN CHAMBERS) ORDER RE CLAIM CONSTRUCTION AND DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT (DKT. 62)**

## I.  Introduction

Kajeet, Inc. ("Plaintiff") alleges that Qustodio, LLC ("Defendant") infringes three United States Patents: U.S. Patent Nos. 8,712,371 ("the '371 Patent"), 8,667,559 ("the '559 Patent"), and 8,630,612 ("the '612 Patent") (collectively "the Asserted Patents"). Complaint, Dkt. 1.

Defendant previously brought a "Motion to Dismiss Case Pursuant to Fed. R. Civ. P. 12(b)(6)," ("Motion" (Dkt. 37)) on the ground that all claims of the three Asserted Patents are invalid because they do not claim patentable subject matter under 35 U.S.C. § 101. After a hearing on the Motion, an order issued that granted the Motion without prejudice to the filing of an amended complaint ("February 28, 2019 Order," (Dkt. 56)). Plaintiff then filed a First Amended Complaint ("FAC" (Dkt. 57)). The FAC includes claims for patent infringement with respect to the same three patents identified in the Complaint. *See* FAC Counts I – III. It also adds claims for relief of "Commercial Disparagement / Business Disparagement / Trade Libel" and "Defamation by Libel." *See* FAC, Counts IV –V.

On April 15, 2019, Defendant filed two motions in response to the FAC. First, Defendant argues that the allegations in the FAC do not correct the earlier deficiency, *i.e.*, all claims of the three asserted patents are invalid for failing to meet the requirements of 35 U.S.C. § 101 (the "§ 101 Motion" (Dkt. 62)). Second, Defendant moved to strike Counts IV and V of the FAC pursuant to Fed. R. Civ. P. 12(f) and the Anti-SLAPP requirements of Cal. Code Civ. Proc. § 425.16(c). Dkt. 61.

On May 29, 2019, the parties filed their Joint Claim Construction and Prehearing Statement. Dkt. 68. The parties filed their opening claim construction briefs on June 3, 2019, and responsive briefs on June 17, 2019. Dkts. 69, 70, 76, 77. The parties have also lodged various documents and materials in support of their claim construction briefs. Dkts. 75, 78, 83.

A hearing on these matters was conducted on July 15, 2019. The parties were provided with a written tentative ruling relating to their claim construction and § 101 dispute and permitted time to review it prior

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | SA CV18-01519 JAK (PLAx) | | Date | November 1, 2019 |
|---|---|---|---|---|
| Title | Kajeet, Inc. v. Qustodio, LLC | | | |

to the hearing. After the hearing, all disputed matters were taken under submission. Dkt. 85. This Order addresses the parties' claim construction disputes and Defendant's § 101 Motion.[1]

Some of the disputed claim terms are construed in this Order. For the reasons stated in this Order, the § 101 Motion is **GRANTED-IN-PART**, with prejudice as to Claims 1-3, 5-8, and 12 of the '371 Patent and Claims 1-6 and 8-12 of the '612 Patent. Therefore, the claims for infringement of the '371 Patent and '612 Patent in the SAC that relate to these patent claims are **DISMISSED WITH PREJUDICE**. The §101 Motion is **DENIED-IN-PART** as to the FAC's claim for infringement of certain claims of the '557 Patent.

## II.    Factual Background

The factual background with respect to the asserted patents was included in the February 28, 2019 Order. It is incorporated here by this reference. For convenience, the language of the February 28, 2019 Order introducing the asserted patents is repeated in this section. Any differences between the factual background section in the February 28, 2019 Order and the remainder of this section are shown in brackets.

The '371 Patent issued April 29, 2014, and is titled "Feature Management of a Communication Device." The '612 and '559 Patents, although each issued prior to the '371 Patent (March 4, 2014 and January 14, 2014, respectively), are continuation patents of the '371 Patent. The '612 and '559 Patents share the same title and substantially the same specification as the '371 Patent.[2]

The Asserted Patents generally disclose methods and systems for "real-time management of a device, and more particularly to the establishment and enforcement of policies or rules associated with the feature or functions that may be performed with the device." '371 Patent at Abstract; *see also id.* at 1:47–50. The Asserted Patents state,

> [p]ostpaid cellular phone (cell phone) services typically allow the user of a cell phone to spend unlimited amounts of money for services. In other words, there is nothing to stop the user from running up a huge cell phone bill. Many parents have experienced this issue with their children, prompting the parents to take their children's phones away or to otherwise restrict their children's access to the phones. Unfortunately, modern society requires that parents have the ability to contact their children by cell phone and vice versa, so the cell phones are often returned to the children despite the possibility of future abuse.

'612 Patent at 1:66–2:9.

The Asserted Patents also state that "[t]he same type of issue exists between employers and employees and other parties in similar administrator/user relationships with respect to the use/abuse of cell phones and other devices." *Id.* at 2:10–13. The Asserted Patents describe the prepaid cell phone as one prior art solution to address these concerns, but explain that a shortcoming with such phones is that once all available time, i.e., credit, on the phone has been used, the service provider for the prepaid cell phone simply shuts down access to all services, such that "the child will not be able to call a parent in the event

---

[1] Defendant's Motion to Strike Counts IV and V was addressed in an earlier Order. *See* Dkt. 102.
[2] All citations in this Order are to the '371 Patent unless otherwise noted.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | SA CV18-01519 JAK (PLAx) | Date | November 1, 2019 |
|---|---|---|---|
| Title | Kajeet, Inc. v. Qustodio, LLC | | |

of an emergency." *Id.* at 2:39–40; *see also id.* at 2:27–41.

After describing some other prior art solutions and their shortcomings, the Asserted Patents explain the narrow issue that they intend to address is "providing limits on overspending and other activities by the user while simultaneously assuring that the user will always be able to use the phone when appropriately needed." *Id.* at 3:56–59.

The [FAC] alleges that Defendant infringes "at least claims 1, 3, and 6 of the '371 Patent." [*See, e.g.*, FAC ¶ 62]. Claims 3 and 6 of the '371 Patent are dependent claims that depend from Claim 1. Claim 1 of the '371 Patent states:

1. A system for managing a computing device, the system comprising:
   a switch or a node configured to receive a request to or from the computing device to perform one or more functions associated with the computing device;
   a policy decider operable to access one or more policies that control one or more functions associated with the computing device, the policy decider further operable to generate a decision to grant or deny the request based on the one or more policies; and
   a policy enforcer operable to enforce the decision of the policy decider as to whether the request has been granted or denied by transmitting data to the switch or node, the data being indicative of one or more actions consistent with the decision to the switch or node.

'371 Patent, Claim 1.

The [FAC] similarly alleges that Defendant infringes "at least Claims 1, 6, and 8 of the '612 Patent." [*See, e.g.* FAC ¶ 78]. Claims 6 and 8 of the '612 Patent are dependent claims that depend from Claim 1. Claim 1 of the '612 Patent states:

1. A system for managing computing devices configured to communicate over one or more networks serviced by one or more service providers, the system comprising a memory bearing instructions that, when executed on the system, cause the system to at least:
   store a policy that controls at least a use of a function on a computing device, the control comprising allowing and disallowing the use of the function based on a context associated with the computing device, the policy being defined by an administrator;
   group one or more computing devices in a group;
   associate the policy with the group;
   receive a request sent to or from a computing device in the group to use the function;
   generate a decision to grant or deny the request based on the policy; and
   enforce the decision by taking an action that is consistent with the decision and by sending to the computing device data indicative of the action, the action allowing or disallowing the use of the function on the computing device.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | SA CV18-01519 JAK (PLAx) | Date | November 1, 2019 |
|---|---|---|---|
| Title | Kajeet, Inc. v. Qustodio, LLC | | |

'612 Patent, Claim 1.

The [FAC] has similar allegations as to Defendant's claimed infringement of "at least claim 27 of the '559 Patent." [*See, e.g.* FAC ¶ 45]. Claim 27 of the '559 Patent states:

> 27.    A method for controlling a computing device configured to execute a function using a communication network managed by a service provider, the method comprising:
>> sending to a server a request to communicate with a remote computing device over the communication network;
>> receiving in real-time from the server a decision granting or denying the request, the decision being based on a policy stored at the server and configured by an administrator; and
>> enforcing the decision by enabling a communication with the remote computing device over the communication network when the decision grants the request and by disabling the communication when the decision denies the request, the communication being enabled or disabled without storing the policy on the computing device.

'559 Patent, Claim 27.

**III.    Analysis**

    A.    Legal Standards

        1.    Claim Construction in General

Claim construction is the process of determining the meaning and scope of the patent claims. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996). It is a matter for the court. *Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 135 S.Ct. 831, 840–41 (2015) ("*Teva I*").

"[T]he words of a claim are generally given their ordinary and customary meaning," which is "the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312–13 (Fed. Cir. 2005) (internal citations and quotations omitted). "In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Id.* at 1314. "In such circumstances, general purpose dictionaries may be helpful. In many cases that give rise to litigation, however, determining the ordinary and customary meaning of the claim requires examination of terms that have a particular meaning in a field of art." *Id.*

"Because the meaning of a claim term as understood by persons of skill in the art is often not immediately apparent, and because patentees frequently use terms idiosyncratically, the court looks to 'those sources available to the public that show what a person of skill in the art would have understood disputed claim language to mean.'" *Id.* (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | SA CV18-01519 JAK (PLAx) | Date | November 1, 2019 |
|---|---|---|---|
| Title | Kajeet, Inc. v. Qustodio, LLC | | |

1111, 1116 (Fed. Cir. 2004)). "Those sources include 'the words of the claims themselves, the remainder of the specification, the prosecution history, and extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art.'" *Id*.

Claim construction "begins and ends" with the words of the claims. *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1248 (Fed. Cir. 1998). "Quite apart from the written description and the prosecution history, the claims themselves provide substantial guidance as to the meaning of particular claim terms." *Phillips*, 415 F.3d at 1314. "[T]he context in which a term is used in the asserted claim can be highly instructive." *Id*. In addition to the words of the claim(s) being construed,

> [o]ther claims of the patent in question, both asserted and unasserted, can also be valuable sources of enlightenment as to the meaning of a claim term. Because claim terms are normally used consistently throughout the patent, the usage of a term in one claim can often illuminate the meaning of the same term in other claims.

*Id*. (citations omitted). "Differences among claims can also be a useful guide in understanding the meaning of particular claim terms." *Id*. "For example, the presence of a dependent claim that adds a particular limitation gives rise to a presumption that the limitation in question is not present in the independent claim." *Id*. at 1314–15. However, "[c]laim differentiation is a guide, not a rigid rule. If a claim will bear only one interpretation, similarity will have to be tolerated." *Laitram Corp. v. Rexnord, Inc.*, 939 F.2d 1533, 1538 (Fed. Cir. 1991) (quoting *Autogiro Co. of Am. v. United States*, 384 F.2d 391, 404 (Ct. Cl. 1967)).

"[C]laims must be construed so as to be consistent with the specification, of which they are a part." *Merck & Co. v. Teva Pharms. USA, Inc.*, 347 F.3d 1367, 1371 (Fed. Cir. 2003). "[T]he person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Phillips*, 415 F.3d at 1313. "[T]he specification 'is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'" *Id*. at 1315 (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)).

"[T]he specification may reveal a special definition given to a claim term by the patentee that differs from the meaning it would otherwise possess. In such cases, the inventor's lexicography governs." *Phillips*, 415 F.3d at 1316. To be a lexicographer, the inventor must "clearly express and intent to redefine the term." *Thorner v. Sony Computer Entm't Am., LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012). "In other cases, the specification may reveal an intentional disclaimer, or disavowal, of claim scope by the inventor. In that instance as well, the inventor has dictated the correct claim scope, and the inventor's intention, as expressed in the specification, is regarded as dispositive." *Phillips*, 415 F.3d at 1316. The inventor must demonstrate intent by "representing a clear disavowal of claim scope" in the specification. *Thorner*, 669 F.3d at 1366.

Despite the importance of a specification, limitations of the described embodiments of the invention must not be read into the claims. The Federal Circuit "expressly rejected the contention that if a patent describes only a single embodiment, the claims of the patent must be construed as being limited to that embodiment." *Phillips* at 1323. Conversely, "an interpretation [which excludes a preferred embodiment] is rarely, if ever, correct and would require highly persuasive evidentiary support." *Vitronics*, 90 F.3d at

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | SA CV18-01519 JAK (PLAx) | Date | November 1, 2019 |
|----------|--------------------------|------|------------------|
| Title    | Kajeet, Inc. v. Qustodio, LLC | | |

1583. Overall, limitations from the specification should not be read into claims. *Thorner*, 669 F.3d at 1366–67.

The prosecution history is also relevant intrinsic evidence. Although "the prosecution history represents an ongoing negotiation between the PTO and the applicant, rather than the final product of that negotiation" and for this reason "often lacks the clarity of the specification," it can nonetheless "often inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be." *Phillips*, 415 F.3d at 1317.

"Although [the Federal Circuit has] emphasized the importance of intrinsic evidence in claim construction, [it has] also authorized district courts to rely on extrinsic evidence, which 'consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises.'" *Id.* (quoting *Markman*, 52 F.3d at 980). The use of "technical words or phrases not commonly understood" may give rise to a factual dispute, the determination of which will precede the ultimate construction. *Teva I*, 135 S.Ct. at 838, 849.

2.    <u>Claim Term Indefiniteness</u>

A patent must conclude "with one or more claims particularly pointing out and distinctly claiming the subject matter which the inventor or a joint inventor regards as the invention." 35 U.S.C. § 112, ¶ 2.[3] A claim term does not meet this standard and is considered indefinite when, "viewed in light of the specification and prosecution history, [it fails to] inform those skilled in the art about the scope of the invention with reasonable certainty." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 910 (2014).

Indefiniteness is a question of law that may include underlying questions of fact, and is commonly raised during claim construction proceedings. *Enzo Biochem, Inc. v. Applera Corp.*, 599 F.3d 1325, 1332 (Fed. Cir. 2010) ("If a claim is indefinite, the claim, by definition, cannot be construed.") (citations omitted); *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1260 (Fed. Cir. 2014) (citing *Wellman, Inc. v. Eastman Chem. Co.*, 642 F.3d 1355, 1365–66 (Fed. Cir. 2011)). The party seeking to show indefiniteness "must establish it by clear and convincing evidence." *BASF Corp. v. Johnson Matthey Inc.*, 875 F.3d 1360, 1365 (Fed. Cir. 2017) ("the burden of proving indefiniteness [is] by clear and convincing evidence."); *Dow Chem. Co. v. Nova Chems. Corp.*, 809 F.3d 1223, 1227 (Fed. Cir. 2015).

3.    <u>Motions to Dismiss</u>

Pursuant to Fed. R. Civ. P. 12(b)(6), a complaint may be dismissed for "failure to state a claim upon which relief can be granted." As the Supreme Court has explained:

To survive a motion to dismiss, a complaint must contain sufficient factual matter,

---

[3] The America Invents Act ("AIA") did not change the relevant language of 35 U.S.C. § 112 at issue here, but modified the labeling convention for this section of the statute from numbers to letters. Thus, for patent applications filed after September 16, 2012, 35 U.S.C. § 112(b) applies rather than 35 U.S.C. § 112 ¶ 2. Because the patents at issue in this case were first filed before September 16, 2012, it is appropriate to use the pre-AIA numbering convention.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | SA CV18-01519 JAK (PLAx) | Date | November 1, 2019 |
|---|---|---|---|
| Title | Kajeet, Inc. v. Qustodio, LLC | | |

accepted as true, to "state a claim to relief that is plausible on its face." [*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)]. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.*, at 556. . . . The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. [*Id.*] Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.*, at 557.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

*Iqbal* identifies "[t]wo working principles" that underlie the standard that applies to a motion to dismiss. *Id.* First, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'— 'that the pleader is entitled to relief.' " *Id.* (quoting Fed. R. Civ. P. 8(a)(2)).

### 4. Section 101 Framework

"Section 101 defines the subject matter that may be patented under the Patent Act." *Bilski v. Kappos*, 561 U.S. 593, 601 (2010). Section 101 provides: "Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. § 101. "Section 101 thus specifies four independent categories of inventions or discoveries that are eligible for patent protection: processes, machines, manufactures, and compositions of matter." *Bilski*, 561 U.S. at 601.

Although the Supreme Court has recognized that "[i]n choosing such expansive terms . . . Congress plainly contemplated that the patent laws would be given wide scope," it has identified three exceptions to the application of Section 101: "laws of nature, physical phenomena, and abstract ideas." *Diamond v. Chakrabarty*, 447 U.S. 303, 308–09 (1980). These exceptions are not required by the text of the statute, but are consistent with the idea that certain discoveries "are part of the storehouse of knowledge of all men" and are "free to all men and reserved exclusively to none." *Funk Bros. Seed Co. v. Kalo Inoculant Co.*, 333 U.S. 127, 130 (1948). Consistent with these principles is that "the concern that drives this exclusionary principle [is] one of pre-emption." *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014) (citation omitted). Consequently, the Supreme Court has required that "[i]f there is to be invention from such a discovery, it must come from the application of the law of nature to a new and useful end." *Funk Bros.*, 333 U.S. at 130. These rules apply in the same manner to product and process claims. *Gottschalk v. Benson*, 409 U.S. 63, 67–68 (1972).

*Alice* is the most recent statement by the Supreme Court on the application of these principles. It expanded the two-step approach for resolving Section 101 issues adopted in *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 77 (2012). In the first step, a court must "determine whether the claims at issue are directed to one of those patent-ineligible concepts." *Alice*, 573 U.S. at 217 (citing

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | SA CV18-01519 JAK (PLAx) | Date | November 1, 2019 |
|---|---|---|---|
| Title | Kajeet, Inc. v. Qustodio, LLC | | |

*Mayo*, 566 U.S. at 77). If this standard is satisfied, then in the second step the court must ask "[w]hat else is there in the claims." *Id.* This requires a consideration of "the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent eligible application." *Id.* (citing *Mayo*, 566 U.S. at 78–79). In performing this second step of the analysis, a court must "search for an 'inventive concept'—*i.e.*, an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'" *Id.* at 217–18 (citing *Mayo*, 566 U.S. at 72–73).

"[W]hether a claim recites patent eligible subject matter is a question of law," but it is one "which may contain underlying factual determinations." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018) (citations omitted). An example of such a factual determination is "[w]hether something is well-understood, routine, and conventional to a skilled artisan at the time of the patent." *Id.* at 1369. Thus, a complaint that properly alleges that individual elements of a claim are not well-understood, routine, or conventional, may be sufficient to state a claim notwithstanding an invalidity challenge under Section 101. *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1128 (Fed. Cir. 2018).

B.    Disputed Claim Terms

1.    "policy" Terms in the '371 and '612 Patents

| Term | Plaintiff's Construction | Defendant's Construction |
|---|---|---|
| "store a policy" ('612 Patent, Claim 1) | no construction is necessary | "only store a rule remotely from the computing device, which cannot be accessed by the computing device" |
| "access one or more policies" ('371 Patent, Claim 1) | no construction is necessary | "access one or more rules that are only stored remotely from the computing device, which cannot be accessed by the computing device" |

Central to the dispute between the parties is where the policies recited in the Asserted Patents can be stored in relation to the claimed computing device. Defendant argues that the policies can only be stored remotely from the computing device. At the hearing, Plaintiff clarified its position that at least some policies must be stored remotely from the computing device, but that the claims should not be limited such that policies are only stored remotely from the computing device.[4]

---

[4] At the hearing, Defendant stated that it would withdraw its proposed claim constructions for the "policy" terms in light of the tentative ruling. However, Defendant stated that its withdrawal of its claim construction positions was also based on the tentative ruling regarding the parties' § 101 dispute. Based on Defendant's qualification of its withdrawal of its claim construction positions, they are considered and addressed.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | SA CV18-01519 JAK (PLAx) | Date | November 1, 2019 |
|----------|--------------------------|------|------------------|
| Title    | Kajeet, Inc. v. Qustodio, LLC | | |

a)      Claim Language

Claim 1 of the '371 Patent states:

1.      A system for managing a computing device, the system comprising:

*a switch or a node configured to <u>receive a request</u> to or from the computing device* to perform one or more functions associated with the computing device;

*a policy decider* operable *to access* one or more policies that control one or more functions associated with the computing device, the policy decider further *operable to generate a decision to grant or deny the request based on the one or more policies*; and

*a policy enforcer* operable to enforce the decision of the policy decider as to whether the request has been granted or denied *by transmitting data to the switch or node*, the data being indicative of one or more actions consistent with the decision to the switch or node.

'371 Patent, Claim 1 (emphasis added). There is no information on the face of the claim regarding the location of the policies that the policy decider can access. Instead, the claim simply requires that the policy decider can access the policy and generate a decision that can be enforced by the policy enforcer.

Defendant argues that, because the preamble of Claim 1 of the '371 Patent refers to a "system for managing a computing device," the recited components cannot be a part of the computing device itself. However, the claim does not state that the system managing the computing device must necessarily be remote from the computing device in every respect. Indeed, Claim 1 of the '371 Patent does not necessarily require that any policies be stored remotely from the computing device at all.

Claim 1 of the '612 Patent states:

1.      A system for managing computing devices configured to communicate over one or more networks serviced by one or more service providers, the system comprising a memory bearing instructions that, when executed on the system, *cause the system* to at least:

*store a policy* that controls at least a use of a function on a computing device, the control comprising allowing and disallowing the use of the function based on a context associated with the computing device, the policy being defined by an administrator;

group one or more computing devices in a group;

associate the policy with the group;

*receive a request <u>sent to or from</u> a computing device in the group* to use the function;

*generate a decision to grant or deny the request <u>based on the policy</u>*; and

*enforce the decision by taking an action* that is consistent with the decision *and by <u>sending to the computing device</u> data indicative of the action, the action allowing or disallowing the use of the function on the computing device*.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | SA CV18-01519 JAK (PLAx) | Date | November 1, 2019 |
|---|---|---|---|
| Title | Kajeet, Inc. v. Qustodio, LLC | | |

'612 Patent, Claim 1 (emphasis added). Again, this claim language does not specify where the system stores policies. Nor is there language that bars the claimed system from storing a policy on the computing device itself.

Defendant acknowledges that Claim 1 of the '371 Patent and Claim 1 of the '612 Patent "do not explicitly identify the precise location of the policies or even where they *may* be stored." Dkt. 70 at 10 (emphasis in original). Nevertheless, Defendant contends that an overall review of these claims in light of the specification supports the conclusion that all policies must always be stored remotely. *See, e.g., id.* at 10–11.

b)      Specification and Prosecution History

Defendant's position and arguments focus on equating the claims to the preferred embodiment disclosed in the specification. The preferred embodiment, which is depicted in Figure 2, shows the mobile station **10** as separate from the other aspects of the network, including the "policy decision point" ("PDP") **29** and the "policy enforcement point" ("PEP") **28**. *See* '371 Patent, Fig. 2. Defendant emphasizes that PDP **29** is only described in the specification as a component that is remote from the computing device. The specification states:

> The PDP **29** is . . . a logical element that can be physically housed in the service manager **20** or in another server accessible to either the service manager **20** or the PEP **28**. The PDP maintains or stores a list of policies that have been established to control the features and functions of the mobile station **10** and decides, based on those policies, to either accept or reject the service request.

'371 Patent at 8:22–28.

Similarly, with respect to PEP **28**, the specification states:

> The PEP **28** is a logical element that can be physically housed in another packet data serving node or a gateway device, depending on the service request, such as a wireless application protocol (WAP) gateway, instant messaging gateway, email gateway, multimedia messaging service gateway, etc. The PEP **28** is responsible for enforcing a decision by the service manager **20** and policy decision point **29** to accept or reject the service request.

'371 Patent at 8:9–16.

These passages are directed to the preferred embodiment in the patent specification. Defendant has not identified other statements showing that the patent applicant intended to limit the scope of the claims as coextensive with the preferred embodiment. This includes as to the location where policies can be stored, and the slightly different claim terms "policy decider" and "policy enforcer" as opposed to "PEP" or "PDP." The Federal Circuit "expressly reject[s] the contention that if a patent describes only a single embodiment, the claims of the patent must be construed as being limited to that embodiment." *Hill-Rom Servs., Inc. v. Stryker Corp.*, 755 F.3d 1367, 1371 (Fed. Cir. 2014) (quoting *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | SA CV18-01519 JAK (PLAx) | Date | November 1, 2019 |
|---|---|---|---|
| Title | Kajeet, Inc. v. Qustodio, LLC | | |

F.3d 898, 904 (Fed. Cir. 2004)). Moreover, Defendant has not identified a lexicographic definition in the specification or shown through the intrinsic record that the patent applicant intended to limit claim scope to policies stored remotely. The word "policy" is commonly-used and understood, and there is no evidence here that a person of ordinary skill in the art at the time of the invention would have interpreted the term as limited to remote storage of policies.

Aside from the preferred embodiment, Defendant refers to a passage in the specification that explains the types of devices that might be used with "wallets." The specification states: "the device could be a PDA, a photocopier, a game, a computer, a network device, a bicycle, or any type of device that one could imagine *that is capable of being remotely controlled by logical rules*." '371 Patent at 5:64–67 (emphasis added). The concept of "wallets" does not appear in the independent asserted claims, and the patent specification separately states: "Feature management can be implemented *with or without wallets*, but is illustrated herein with wallets to provide a more thorough explanation of how feature management works." *Id.* at 3:66–4:2 (emphasis added). In addition, this is the only place in the patent specification where the term "remote[ ]" is used. It does not refer to the policies themselves or their locations, but to a more general statement of "remote[ ] control[ ] by logical rules." It is insufficient to support the conclusion that some portion of the claimed policies in Claim 1 of the '371 Patent and Claim 1 of the '612 Patent must always be stored remotely.

The same shortcomings are present for the second portion of Defendant's proposal for these two policy terms, *i.e.*, that the policies cannot be *accessed by* the computing device. Once again, Defendant has not identified "words of manifest exclusion or restriction" that support restricting the meaning of any of the "policy" terms to include this limitation. *See Hil-Rom*, 358 F.3d at 904. Defendant does refer to a passage of the prosecution history of the '559 Patent. However, the statements made in the prosecution history were directly related to claim limitations that appeared in proposed claim 1 of the application that led to the '559 Patent. *See* FAC, Ex. H (Dkt. 57-8, '559 Patent Prosecution History, October 17, 2013 Reply to Office Action) at 10; *see also id.* at 2 (Proposed Claim 1, including limitation that "the requested communication be[ ] enabled or disabled without ~~storing~~ accessing the one or more policies ~~by~~ ~~on~~ the computing device."). Neither Claim 1 of the '371 Patent nor Claim 1 of the '612 Patent includes the limitation "without accessing the one or more policies on the computing device." Further, Defendant has not otherwise shown that these claim phrases should be limited to include this requirement.

c)      Extrinsic Record

Both parties refer to extrinsic evidence, including statements made by their experts, to support their arguments that at least some, if not all, policies must be stored remotely from the computing device. Defendant also argues that Plaintiff should be judicially estopped from arguing its broader proposed constructions based on its earlier statements opposing Defendant's original motion to dismiss pursuant to 35 U.S.C. § 101. At the hearing, Plaintiff emphasized that the experts of both parties have offered opinions that at least some policies are stored remotely.

Having considered the extrinsic evidence and additional arguments, they are not found probative in determining the meaning of the "policy" terms as they are used in Claim 1 of the '371 Patent and Claim 1 of the '612 Patent. Defendant's expert refers back to an analysis of the intrinsic evidence itself and does not provide a fact-based analysis of the meaning of these terms. *See Teva Pharms. USA, Inc v. Sandoz, Inc.*, 789 F.3d 1335, 1342 (Fed. Cir. 2015) ("*Teva II*") ("Experts may explain terms of art and the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | SA CV18-01519 JAK (PLAx) | | Date | November 1, 2019 |
|---|---|---|---|---|
| Title | Kajeet, Inc. v. Qustodio, LLC | | | |

state of the art at any given time, . . . they cannot be used to prove the legal construction of a writing."); *see, e.g.,* Declaration of James Geier in Support of Defendant's Claim Construction Brief ("Geier Decl."), Dkt. 70-1 ¶¶ 72–77 (providing opinions regarding the term "policy decider" by reference to the claim language, specification, and prosecution history).

Knutson, who is Plaintiff's expert, also relies on an analysis of the intrinsic record. For example, he states that "the Patents-in-Suit expressly define storage location(s) of the policy within different claimed embodiments, whether the policy may be stored at the server or at both the server and device." *Id.* ¶ 36 (citing claims of '559 Patent); *see also id.* ¶ 40 (same statements as to Claim 1 of the '371 Patent). Declaration of Charles D. Knutson in Support of Plaintiff's Opening Claim Construction Brief, "Knutson Claim Construction Decl.," Dkt. 69-12 ¶ 34; *see also id.* ¶ 38 (same as to Claim 1 of the '371 Patent). Knutson then opines in broader terms that "no statements within the intrinsic record operate to disavow claim scope and limit the claims to encompassing only a component arrangement shown or described in a particular or preferred embodiment." *Id.* ¶ 56. In his declaration in support of Plaintiff's opening claim construction brief, Knutson does not state a basis for his purported opinion that there must be at least some policies stored remotely. Instead, those opinions were provided in his declaration in support of Plaintiff's opposition to Defendant's first motion to dismiss. However, their basis was only Knutson's interpretation of the claim language itself. *See, e.g.* Declaration of Charles D. Knutson in support of Plaintiff's opposition to Defendant's Motion to Dismiss. "Knutson Decl.," Dkt. 43-7 ¶¶ 21 ("The requirement for remote policy storing is implicit in claim 1 of the '371 Patent"), 23 ("The requirements for remote policy storing . . . are included within the limitations of claim 1 of the '612 Patent").[5]

For these reasons, the positions advanced by the competing experts, which are based on their interpretations of the language of the patent, are not persuasive. Further, under the present circumstances, and given that claim construction is an issue of law, it is unnecessary to address in this section Defendant's arguments regarding Plaintiff's shifting interpretations of the claims. However, they are addressed below in connection with the discussion of Defendant's Motion to Dismiss pursuant to 35 U.S.C. § 101.

          d)     Conclusion

Neither party has shown that the "policy" terms as they are used in Claim 1 of the '371 Patent or Claim 1 of the '612 Patent require that policies must be stored remotely from the claimed computing device. The terms "store a policy" and "access one or more policies" are not construed.

        2.     <u>Other Disputed Claim Terms in the '371 and '612 Patents</u>

The parties have other disputes as to claim construction disputes for other terms that appear in the '371 and '612 Patents. However, those disputed terms need not be construed at this time, based on the analysis and determination stated below, in which certain claims of the '371 and '612 Patents are deemed

---

[5] Defendant previously challenged the timing of Plaintiff's disclosure of the Knutson Declaration in support of its claim construction positions. Dkt. 71. For that reason, a determination of whether the challenged materials would be considered was reserved. Dkt. 74. As to the specific paragraphs of the Knutson Declaration considered in this section of the Order and other evidence challenged by Plaintiff and addressed here, exclusion is not warranted. Therefore, Defendant's request as to these portions is **DENIED**. The remainder of Defendant's challenge is **MOOT**.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | SA CV18-01519 JAK (PLAx) | Date | November 1, 2019 |
|----------|--------------------------|------|------------------|
| Title | Kajeet, Inc. v. Qustodio, LLC | | |

invalid under 35 U.S.C. § 101.

    3.    <u>"policy" and "decision" Terms in '559 Patent, Claim 27</u>

| Term | Plaintiff's Construction | Defendant's Construction |
|------|--------------------------|--------------------------|
| "a policy stored at the server" ('559 Patent, Claim 27) | no construction is necessary | "A rule that is only stored remotely from the computing device at the server, which cannot be accessed by the computing device" |
| "enforc[e/ing] the decision" ('559 Patent, Claim 27) | no construction is necessary | "enforce[e/ing] the decision remotely from the computing device" |

Claim 27 of the '559 Patent includes the terms "a policy stored at the server" and "enforcing the decision." It states:

    27.    A method for controlling a computing device configured to execute a function using a communication network ***managed by a service provider***, the method comprising:

        ***sending <u>to a server</u> a request*** to communicate with a remote computing device over the communication network;

        receiving in real-time ***from the server*** a decision granting or denying the request, ***the decision being based on a policy <u>stored at the server</u> and*** configured by an administrator; and

        enforcing the decision by ***enabling a communication with the remote computing device over the communication network*** when the decision grants the request and by disabling the communication when the decision denies the request, the communication being enabled or disabled ***<u>without storing the policy on the computing device</u>***.

'559 Patent, Claim 27 (emphasis added). The requirement that both storing a policy and enforcing a decision occur remotely is apparent from the express claim language. Defendant's proposed constructions would be redundant of that language as to this claim.

Because the parties cannot reasonably dispute the plain claim language that shows that the claimed policy and claimed enforcement step in Claim 27 of the '559 Patent occur remote from the computing device, no further construction of these claim terms is necessary.

    4.    <u>"units of value"</u> ('559 Patent, Claim 30)

| Plaintiff's Construction | Defendant's Construction |
|--------------------------|--------------------------|
| no construction is necessary | "an indicator of worth, cost, or charge associated with a limited resource, such as |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No. | SA CV18-01519 JAK (PLAx) |
| Title | Kajeet, Inc. v. Qustodio, LLC |

| | | | Date | November 1, 2019 |

| | real or virtual currency, service, units, credits, or airtime, that is associated with and transferrable between at least two wallets" |
|---|---|

The claim term "units of value" appears in dependent claims of the Asserted Patents. For example, Claim 3 of the '371 Patent states:

> 3. The system of claim 1, wherein the one or more policies comprises a limit on units of value that can be used to perform the one or more functions, wherein the decision denies the request when performing the function causes the limit to be exceeded.

'371 Patent, Claim 3; *see also* '612 Patent, Claim 4 ("[t]he system of claim 1, wherein the context comprises one or more units of value associated with a charge for the use of the function"); '559 Patent, Claim 1 ("[t]he computing device of claim 27, further comprising one of decrementing a charge of units of value from an account associated with the computing device, determining a balance of units of value in the account, determining a status of the account, or implementing the request when the decision grants the request").

Plaintiff argues that Defendant's proposed construction would limit the meaning of the term solely to the specific examples provided in the specification. Dkt. 69 at 22. Plaintiff also argues that Defendant's proposal would improperly require a "unit of value" to be "associated with and transferrable between at least two wallets." *Id.* at 22–23.

One passage of the specification states: "It should be noted that although the term 'funds' is used herein to refer to the value stored in or charged to a wallet, an electronic wallet could also be used to store and spend almost any type of *unit of value*, whether money, credits, or some other indicator." '371 Patent at 4:51–55 (emphasis added).

Another passage of the specification states:

> In the context of a pre-paid phone, a wallet would typically include a balance that corresponds to some amount of United States Dollars deposited with the service provider. In other contexts, as noted above, a wallet could be designed to hold *any unit of value* in place of dollars, including other currency types, service units, assets, or even something completely made up that only has value in some limited context, like virtual money in a multiplayer, on-line, role playing game.

*Id.* at 7:36–44 (emphasis added).

Although these passages appear to be generally consistent with the first portion of Defendant's proposed construction ("an indicator of worth, cost, or charge associated with a limited resource, such as real or virtual currency, service, units, credits, or airtime"), Plaintiff notes the general references to "some other indicator" and expresses concern that this portion of Defendant's proposal is limiting. Defendant argues that its proposal is intended to distinguish units of value from "arbitrary limits on usage," and refers to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | SA CV18-01519 JAK (PLAx) | Date | November 1, 2019 |
| Title | Kajeet, Inc. v. Qustodio, LLC | | |

"ringtones and/or games" as examples that should not constitute "units of value." Dkt. 70 at 22.

The parties' arguments do not make clear whether Plaintiff would assert that a "ringtone and/or game" could be considered a unit of value. Based on the plain meaning of the term in the context of the surrounding claim language, which requires that "units of value that ***can be used to perform the one or more functions***" or "units of value associated ***with a charge***," it does not appear that Defendant's counter-example would be covered by the plain language of the claims themselves. Defendant does not provide a basis for the following portion of its proposal, *i.e.*, "associated with a limited resource."

With respect to wallets, the patent specification states:

> In the context of the present invention, a ***wallet is like an electronic account*** that has certain added features that accounts do not have and which can be used in additional ways that accounts are not used. A wallet can also be a singular item that includes a number of control features or a collection of items, each having their own control features, which operate in conjunction or cooperate with one another to achieve the same purpose as a singular item.

'371 Patent at 3:54–61 (emphasis added).

The specification then states:

> ***Feature management can be implemented with or without wallets***, but is illustrated herein with wallets to provide a more thorough explanation of how feature management works. Some of the features of a wallet that are added to an account include how money is entered into the wallet, who holds or has access to the wallet, the rules that apply to how each wallet can be used for different services, and the hierarchical use of the wallets for each service.

*Id.* at 3:66–4:6 (emphasis added).

Funds and units of value are described in the specification in the context of wallets. *See id.* at 4:51–55, 7:36–44. However, the term "wallet" does not appear in the relevant asserted claims. Construing the term "unit of value" to include the undefined term "wallet" could create further complexity as to the meaning of the term rather than simplifying its meaning for a juror. Thus, the term "wallet" would require further definition.

In addition, Claim 30 of the '559 Patent independently refers to the concept of "an account associated with the computing device." Defendant has not shown that the other claims should be limited by requiring similar limitations related to an account or "wallet" to be implicitly present in the claim term "unit of value."

Similarly, the portions of the specification referring to "unit[s] of value" do not show that the patent applicant specifically intended that a fund or a unit of value is limited such that it ***must always*** be associated with and/or transferable between two wallets. Defendants cite to a portion of the patent specification that states: "some of the key features of wallets in the context of the present invention are: . . . (2) that each device requires at least two wallets to be associated with it, at least one user wallet and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | SA CV18-01519 JAK (PLAx) | Date | November 1, 2019 |
|---|---|---|---|
| Title | Kajeet, Inc. v. Qustodio, LLC | | |

at least one administrator wallet." '371 Patent at 15:13–18. Defendant, however, does not suggest that the other three "features" in this numbered list in the specification should also be incorporated into the meaning of the term "units of value." Nor does Defendant otherwise show that lexicography or disclaimer support placing this narrowing limitation on the meaning of the term "units of value."

Based on a review of the arguments advanced by the parties, Defendant has not shown that a juror would be unable to understand the meaning of the non-technical term "unit of value" or that the meaning should otherwise be limited based on the intrinsic record. For these reasons, the term is not construed.

C.    Defendant's Motion to Dismiss Under 35 U.S.C. § 101

The February 28, 2019 Order granted Defendant's motion to dismiss the initial complaint, but permitted Plaintiff to file an amended one. Based on arguments presented by Plaintiff in opposing Defendant's motion to dismiss that were not included in the initial complaint, the Order also determined that it would not be futile to permit Plaintiff to file an amended complaint. As stated in the February 28, 2019 Order:

> Plaintiff disputes this characterization of the claims and asserts that they instead are "directed to systems and methods for effecting policy-based controls over communication devices." Dkt. 43 at 13. Plaintiff then argues that,
>
> > these claims require remote storage of usage policies which are thereby less vulnerable to manipulation by the user of the device(s) being managed while still accommodating real-time, continuous control during device usage, thereby improving the functionality of the computer-based systems through improved security, effectiveness, and robustness of the control accommodated.
>
> *Id.* at 6 . . . .
>
> Plaintiff's position regarding the nature of the claims is premised on the assertion that each of the asserted claims requires, and there is a technological improvement created by, policies for managing computing devices that are stored separately from the computing devices. Plaintiff relies on the claim language itself to support its argument that the claims recite policies for managing computing devices that are stored remotely from the computing devices. Plaintiff's principal, cited support for the assertion that this arrangement creates a technological improvement, however, does not come from the intrinsic record of the Asserted Patents or from the Complaint. Instead it is based more on the Declaration of Charles D. Knutson submitted in support of Plaintiff's opposition to Defendant's Motion to Dismiss. Knutson Decl., Dkt. 43-7 ¶¶ 18, 20-23. The Knutson Declaration states, for example, that "the remote storage of usage policies . . . are thereby less vulnerable to manipulation by the device user, at the same time accommodating real-time, continuous control concurrent with device usage, which improved the functionality of computer-based systems through improved security, effectiveness, and robustness of control." *Id.* ¶ 20. Plaintiff relies on the Knutson Declaration and similar arguments to support its position under *Alice* step two. Dkt. 43 at 24.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | SA CV18-01519 JAK (PLAx) | Date | November 1, 2019 |
|---|---|---|---|
| Title | Kajeet, Inc. v. Qustodio, LLC | | |

Dkt. 56 at 5–6.

Many of the parties' current arguments with respect to whether the FAC plausibly alleges claims that satisfy 35 U.S.C. § 101 were presented in the briefing or at the hearing on the motion to dismiss the initial complaint. Each party includes statements in its current briefing that are the same or substantially the same as those made in its previous briefing. *Compare* Dkt. 37 at 7–8 *with* Dkt. 62 at 9–10 (Defendant's previous and current memoranda in support of motion to dismiss, using almost verbatim language to present some of Defendant's arguments with respect to *Alice* step one); *compare* Dkt. 37 at 10–13 *with* Dkt. 62 at 12–15 (Defendant's previous and current memoranda in support of motion to dismiss, using substantially same chart purporting to apply language of claims to pre-existing practice of an adult enforcing decision to permit access to content); *compare* Dkt. 46 at 6 *with* Dkt. 62 at 11 (Defendant's previous memorandum in reply and current memorandum in support of motion to dismiss, using different language, but drawing the same comparison between the claims in the asserted patents and the claims analyzed by the Federal Circuit in *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1345 (Fed. Cir. 2016) to argue the claims are drawn to an abstract idea); *compare* Dkt. 43 at 15–16 *with* Dkt. 64 at 13–14 (Plaintiff's previous and current memoranda in opposition to motion to dismiss, using substantially similar language to describe the Federal Circuit decisions in *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1339 (Fed. Cir. 2016) and *Visual Memory LLC v. NVIDIA Corp.*, 867 F.3d 1253 (Fed. Cir. 2017)).

Notwithstanding this overlap, the February 28, 2019 Order was issued before the parties had filed their claim construction briefs and determinations were reached regarding the scope of disputed terms. Although these claim construction determinations are matters outside of the pleadings, because claim construction is a question of law, *Markman v. Westview Instruments, Inc.* 52 F.3d 967, 970–71 (Fed. Cir. 1995), other district courts have concluded that it is permissible to "take notice of and rely on [a] claim construction opinion" without converting a motion under Fed. R. Civ. P. 12(c) for judgment on the pleadings into one for summary judgment. *Intellectual Ventures I LLC v. AT&T Mobility LLC*, 235 F. Supp. 3d 577, 588 (D. Del. 2016). On the record presented here, this same principle applies in assessing Defendant's) motion under Fed. R. Civ. P. 12(b)(6) to dismiss certain claims.

        1.    <u>Claim 1 of the '371 Patent and Claim 1 of the '612 Patent</u>

                a)    *Alice* Step One

As determined in this Order, Claim 1 of the '371 Patent and Claim 1 of the '612 Patent do not require a "remote" relationship of policies compared to the claimed computing device. Those determinations undermine statements that Plaintiff made, and on which the February 28, 2019 Order relied, in the context of the parties' dispute under 35 U.S.C. § 101.

Plaintiff makes similar statements about remote policies in support of its opposition to the current § 101 Motion. Plaintiff states:

> By virtue of storing policies remotely from the controlled device, they are inaccessible to the controlled device for manipulation or deletion, thereby improving system effectiveness. Dkt. 57 [FAC] at ¶¶ 40, 56, 73 . . . . [Defendant] cannot controvert that the claims at issue capture the specific architecture in which policies are stored remotely from the computing

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | SA CV18-01519 JAK (PLAx) | Date | November 1, 2019 |
|---|---|---|---|
| Title | Kajeet, Inc. v. Qustodio, LLC | | |

device being controlled.

Dkt. 64 at 2–3.

Remote policy storage is critical and central to the argument in the Opposition to support Plaintiff's patent eligibility arguments at *Alice* Step One. *See id.* at 4–5 ("The asserted claims require remote storage of usage policies which are thereby less vulnerable to manipulation by the user of the device(s) being managed while still accommodating real-time, continuous control during device usage."), 13 ("The claims are addressed to specific solutions in which the policies applied are stored remotely and are, therefore, inaccessible by the controlled device . . . These limitations capture the distributed architecture scheme resulting in improved effectiveness of the claimed systems."), 15 ("[S]ystems which require no communication to a remote component storing usage policies cannot be within the scope of the challenged claims.").

Claim 1 of the '371 Patent and Claim 1 of the '612 Patent, as construed, do not reflect that the claimed policies must necessarily be stored or accessed remotely from the managed computing device. For this reason, the allegations in the FAC and Plaintiff's arguments regarding remote policy storage and the distributed architecture scheme purportedly created by that remote policy storage, are irrelevant to the patent eligibility inquiry as to those claims. Plaintiff does not present any independent arguments sufficient to support the conclusion that these claims are directed to a technological improvement, as opposed to an abstract idea, at *Alice* Step One. According to the FAC and the attached Knutson Declaration, local storage of policies at the computing device being managed are more "vulnerable to manipulation by the device user." Dkt. 43-7 ¶ 20. Because the claims as construed would permit local storage of policies, Plaintiff's arguments that the claims are directed to a technological improvement are without force.

At the hearing, Plaintiff agreed that, if Claim 1 of the '371 Patent and Claim 1 of the '612 Patent were interpreted in a manner that remote policy storage was not required, the claims would be problematic. Plaintiff emphasized its position that the terms should be construed to require at least some remote storage of policies. Plaintiff asserted that, as long as there is some remote storage of policies, even if some policies may also be stored on a computer itself, technological benefits still flow from the claimed systems. Because the claims have not been construed as Plaintiff proposed, these arguments are not persuasive. However, even if Plaintiff's claim construction position were adopted, Plaintiff still could not show that claims broad enough to cover the storage of policies *both* locally and remotely would lead to a technological improvement rendering the claims non-abstract at *Alice* Step One. The emphasis by Plaintiff and Knutson on benefits to the security of the policies would be without force.

Considering these claims as a whole, particularly the lack of limitations on the location of policies, their focus is on systems for managing access to functions based on policies, without regard to where the policies are stored. Therefore, the claims are directed to using policies to generate and enforce decisions in one or more computing devices, *i.e.*, the abstract idea of allowing/disallowing functions based on policies. These are abstract concepts.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | SA CV18-01519 JAK (PLAx) | Date | November 1, 2019 |
|----------|--------------------------|------|------------------|
| Title | Kajeet, Inc. v. Qustodio, LLC | | |

b) *Alice* Step Two

At *Alice* Step Two, Plaintiff again argues that "[t]he component arrangement required by the challenged claims using remote policy storage in the context of feature management of a computing device was not well-known, routine, or conventional." Dkt. 64 at 19; *see also id.* at 21 ("Here, the challenged claims similarly require that the policies be stored remotely from the controlled device and with no less specificity [than] provided in the claims of *BASCOM*."). As noted, the claim construction determined that remote policy storage is not a required limitation of Claim 1 of the '371 Patent or Claim 1 of the '612 Patent. Therefore, Plaintiff's stated basis for patent eligibility at *Alice* Step Two in which it refers to the particular arrangement of claim elements to create a "distributed architecture," is again without force.

The FAC does not otherwise allege that the individual claim elements represent anything other than well-understood, routine, and conventional computer components. As also noted, Plaintiff's expert has expressed familiarity with the terms "policy deciders" and "policy enforcers" outside the context of the Asserted Patents and specifically Claim 1 of the '371 Patent. Knutson Decl., Dkt. 69-12 ¶¶ 43, 51. Similarly, Plaintiff does not argue that the switch or node recited in Claim 1 of the '371 Patent is anything more than a routine and conventional component. Nor does Plaintiff argue that the elements of Claim 1 of the '612 Patent require execution on unconventional computer components.

For the foregoing reasons, these claims as construed fail to satisfy the requirements of *Alice* Step Two.

c) Representative Claims

In support of the § 101 Motion, Defendant argued that Claim 1 of the '371 Patent and Claim 1 of the '612 Patent are representative of each of the other respective claims in each of these patents. In an *ex parte* application filed after the hearing on the Motion, Defendant identified the asserted claims for the '371 and '612 Patents: '371 Patent, Claims 1–3, 5–8, and 12; and '612 Patent, Claims 1–6 and 8–12. Dkt. 96 at 1. Therefore, only these asserted claims are considered for purposes of a representative claim patent eligibility analysis.

Regarding the asserted dependent claims of the '371 Patent that depend from Claim 1, they generally refer to defining the type of computing device and its associated accounts (Claims 2, 7, 12), the type of policies and their accessibility (Claims 3, 6, 8), the type of functions (Claim 5), and the type of actions (Claim 12). As to the asserted dependent claims of the '612 Patent, they generally refer to defining further the groups and policies and their accessibility (Claim 2, 5, 6, 8, 9, 10, 11), the type of functions (Claim 3, 10), the context (Claim 4), and the data indicative of the action (Claim 12). Thus, these dependent claims refer to components that are still linked to the abstract idea presented by the independent claims. In addition, Plaintiff does not assert that any of the additional recited elements have distinctive significance on another basis, *e.g.*, that they are not well-understood or routine components. *See, e.g., Berkheimer*, 881 F.3d at 1365; *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014). Although the dependent claims narrow the independent claims, Plaintiff has not made a sufficient showing that these narrowing limitations support patent-eligibility separate from the limitations of the independent claims.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | SA CV18-01519 JAK (PLAx) | Date | November 1, 2019 |
|----------|--------------------------|------|------------------|
| Title | Kajeet, Inc. v. Qustodio, LLC | | |

Based on these determinations and the allegations presented in the FAC, Claims 1-3, 5-8, and 12 of the '371 Patent and Claims 1-6 and 8-12 of the '612 Patent fail to satisfy the requirements of 35 U.S.C. § 101. Based on the claim constructions in this Order, as well as the previous assertions made in the FAC, leave to amend the FAC with respect to these claims would be futile. Therefore, Defendant's § 101 Motion is **GRANTED** with prejudice as to these claims and **DENIED** as to all other claims of the '371 and '612 Patents, none of which has been presented as a basis for the patent infringement causes of action in this action. The claims in the FAC as relating to Claims 1-3, 5-8, and 12 of the '371 Patent and Claims 1-6 and 8-12 of the '612 Patent are **DISMISSED WITH PREJUDICE**.

2.   Claim 27 of the '559 Patent

With respect to Claim 27 of the '559 Patent, the plain claim language supports the conclusion that the claims are limited to circumstances where policies are stored remotely. The analysis in the February 28, 2019 Order is incorporated by this reference as it relates to Claim 27 of the '559 Patent. The FAC adds allegations consistent with evidence that Plaintiff previously attempted to submit in support of its opposition to the motion to dismiss the original complaint, but which was not included as part of the original complaint itself. The new allegations of the FAC plausibly allege that this claim is at least drawn to a non-conventional arrangement of claim elements. This includes the requirement of the claim as to remote storage of policies on a server and the remote, real-time receipt and enforcement of decisions based on those policies through a communications network.

Defendant's arguments in the § 101 Motion, including those that are repeated from its earlier motion to dismiss, are unpersuasive as to this claim. *See Bascom*, 827 F.3d at 1345 (Fed. Cir. 2016); *see also Cellspin Soft, Inc. v. Fitbit, Inc.*, No. 2018-1817, 2019 WL 2588278, at *8 (Fed. Cir. June 25, 2019) ("While we do not read *Aatrix* to say that any allegation about inventiveness, wholly divorced from the claims or the specification, defeats a motion to dismiss, plausible and specific factual allegations that aspects of the claims are inventive are sufficient.").

For these reasons, Defendant's § 101 Motion is **DENIED** without prejudice to a later challenge to this claim and the other claims of the '559 Patent based upon a factual record.

**IV.   Conclusion**

For the reasons stated in this Order, the § 101 Motion is **GRANTED-IN-PART** with prejudice as to Claims 1-3, 5-8, and 12 of the '371 Patent and Claims 1-6 and 8-12 of the '612 Patent, and the claims advanced in the FAC for infringement as it relates to these claims in the '371 Patent and '612 Patent are **DISMISSED WITH PREJUDICE**. The § 101 Motion is **DENIED-IN-PART** as to the claims of the '559 Patent.

The following constructions with respect to the '559 Patent shall govern this case.

| Term | Court's Construction |
|------|---------------------|
| "a policy stored at the server" ('559 Patent, Claim 27) | No construction |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | SA CV18-01519 JAK (PLAx) | Date | November 1, 2019 |
|---|---|---|---|
| Title | Kajeet, Inc. v. Qustodio, LLC | | |

| "enforce[e/ing] the decision" ('559 Patent, Clam 27) | No construction |
|---|---|
| "units of value" ('559 Patent, Claim 30) | No construction |

**IT IS SO ORDERED.**

_____ : _____
Initials of Preparer     ak